UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNIVERSAL TRADING & INVESTMENT CO., INC., | Docket No. 11-civ-7877-PAC |
| Plaintiff, | |
| -vs- | **DECLARATION OF KENNETH F. McCALLION IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS THE COMPLAINT** |
| YULIA TYMOSHENKO, | |
| Defendant. | |

**KENNETH F. McCALLION**, an attorney duly admitted to the practice of law before this Court and elsewhere, declares as follows under penalties of perjury:

1. I am the principal attorney in the law firm of McCallion & Associates, LLP, attorneys for the defendant in the above-captioned action. I submit this affirmation in support of defendants' motion to dismiss the complaint of Plaintiff Universal Trading & Investment Co. Inc.( ("UTICo" or "Plaintiff").

2. In its Complaint, UTICo seeks to collect on a default judgment that it obtained in the Massachusetts district court against United Energy Systems of Ukraine PFG ("UESU") on July 7, 2005 ("the UESU Judgment").

3. Although UTICo does not have a judgment against defendant Tymoshenko, Plaintiff nevertheless claims that Plaintiff should be held personally liable for the UESU Judgment.

4. UTICo previously moved to intervene in an action pending in this Court (originally before Judge Sullivan and now before Judge Nathan (See 11 Civ. 2794 (AJN)),

where Tymoshenko is a plaintiff. On October 19, 2011, Judge Sullivan denied UTICo's motion to intervene, finding that there were no common issues of law or fact with Tymoshenko's pending human rights action under the Alien Tort Statute.

5. As discussed herein, as well as in the accompanying Memorandum of Law, plaintiff 's Complaint relates to alleged activities that took place entirely outside the United States, and is completely devoid of any factual assertions that would provide the basis for a finding by this Court that it had personal jurisdiction over the defendant.

6. In addition, there are strong public policy reasons why the allegations of this Complaint should not be decided by this Court, or any U.S. court. First of all, UTICo has acted in the past as an agent of the Ukraine government, and, upon information and belief, it is acting as a proxy for the current Ukraine administration in this action as part of an overall scheme and plan to embarrass and neutralize the defendant as a leader of the political opposition in Ukraine. It is public knowledge, and conceded by the plaintiff here, that defendant Tymoshenko has been the subject of successive criminal investigations by the current Ukraine administration, the latest of which relates to the same allegations as set forth here in the Complaint, namely, that the defendant unlawfully diverted monies from UESU, a third party Ukrainian company that acted as an intermediary in various natural gas transactions between Russia and Ukraine. It is readily apparent, therefore, that this Complaint was solely designed to open up another litigation "front" against the defendant, forcing her to spend time and resources defending baseless and previously discredited allegations in the U.S. while she is incarcerated and facing the same charges as part of a politically-motivated criminal prosecution in Ukraine.

7. In addition, there is another strong public policy and judicial principle that favors the dismissal of this action, namely, that a party should not be permitted to take

inconsistent positions in pending cases before different courts. As detailed below, plaintiff has brought numerous (and unsuccessful) actions in various U.S. courts around the country in an attempt to collect on its default judgment against UESU, which it obtained in 2005 in Massachusetts federal court. In most of these cases, UTICo was attempting to obtain a share of funds that had been seized by the U.S. in connection with its investigation and prosecution of Pavlo Lazarenko, a former Ukraine official who is now a "guest" of the federal penal system. In these cases, UTICo argued, in essence, that it was entitled to collect its UESU judgment against the seized assets of Lazarenko because Lazarenko and a close associate, Petro Kiritchenko, so dominated and controlled UESU that the corporate veil should be pierced so as to permit UTICo to collect directly from Lazarenko.

8. In the instant case, UTICo takes a position that is completely inconsistent with the legal position that it has taken in other U.S. courts for the past two decades, namely, that its judgment against UESU should now be collected against Tymoshenko since she (not Lazarenko) was really the one who dominated and controlled UESU. Such legal sleight of hand should not be permitted, as a matter of sound judicial policy.

    **A.**     **All of the Acts Alleged in the Complaint Took Place Outside the U.S., With the Possible Exception of UESU's Correspondent Banking Relationships in New York**

9. In its Complaint, which is for collection of a judgment obtained by plaintiff against a third-party company in the District Court for the District of Massachusetts in 2005, plaintiff alleges that defendant Tymoshenko, through her alleged control of United Energy Systems of Ukraine ("UESU"), has put the "corporate assets …under her personal control." See Complaint at ¶ 2.

3

10. However, UESU is a Ukrainian corporation, and nowhere in the Complaint is it alleged that UESU does business in the United States. The sole assertion by plaintiff that this Court has jurisdiction over defendant is that "Tymoshenko has done business in New York, causing wire transfers to pass the bank accounts in New York." (*Id*. at ¶ 7 and ¶ 9). In other words, the only allegation that the defendant conducted business in New York is that she "caused" UESU to make wire transfers of funds from one offshore account to another offshore account, and that UESU's offshore bank used correspondent banking arrangements with other New York banks to facilitate the transfer of funds between these two offshore locations, *i.e.,* to "pass through" New York banks as part of the electronic journey from one offshore location to another.

11. Plaintiff also asserts that defendant "has set up United Energy International, Ltd. ("UEI") in the State of Virginia and caused the acquisition of the office property for her needs." *Id*. at ¶ 10; *see also Id*. at ¶ 51. However, since plaintiff does not have any judgment against UEI, and the Complaint nowhere asserts that there is a relationship between UESU and UEI, this assertion has nothing to do with its claim that the defendant is somehow a "garnishee" under New York law who is liable for plaintiff's judgment against UESU.

12. Although the Complaint alleges that Tymoshenko participated in one or two transactions involving plaintiff, none of these alleged transaction involving the defendant had anything to do with the U.S. Indeed, in the first of alleged transactions, the judgment debtor (UESU) was not even involved, since the underlying transaction is alleged to have taken place in April of 1994 (*Id.* at ¶ 20), prior to the formation of UESU in November 1995. See Complaint at ¶ 27. Instead, according to the Complaint, Tymoshenko was acting on behalf of another company (Cube, Ltd.), which "claimed a loss of approximately

half the value of the first delivery of about $2.6 million value in ferrous metals [from Ukraine] to China, through Indian intermediaries." Complaint at ¶ 19.

13.     With reference to this Cube Ltd. transaction, plaintiff alleges that Tymoshenko directed plaintiff to "route" the $660,000 recovered from the Indian intermediaries to a Cyprus company (Somolli Enterprises, Ltd.). Clearly, therefore, this transaction between plaintiff and a third party company (Cube) had nothing to do with any business activities in the U.S., and do not even relate to any activity by judgment debtor UESU at all.

14.     As plaintiff concedes, UESU was established primarily as "an intermediary for natural gas imports from Russia [to Ukraine]." *Id.* at ¶ 26. It is alleged that the proceeds of these gas transaction "were routed to the offshore accounts," none of which were located in the U.S. *Id*. at ¶ 36 and 38. Plaintiff also alleges that UESU "used fabricated invoices" in the name of Somolli, using a "Macedonia national" who was "housed in Ukraine." *Id*. at ¶39. These fabricated invoices and payment orders were then allegedly used "to transfer proceeds from UEIL's London account to Somalli's accounts in Cyprus. *Id.* at ¶ 40. [1]

15.     The only alleged involvement of New York banking facilities is that certain correspondent banks were strictly used as intermediaries in wire transfers between the Somolli bank account in Cyprus and the Eurofed bank in Antigua, which was allegedly controlled by Lazarenko's assistant Kirichenko. *Id*. at ¶s 46 and 47.  These wire transfers were not arranged by the defendant herself, but allegedly by her husband. *Id*. Indeed, the Complaint's conclusory assertion that some New York banks were somehow involved in these wire transfers from one non-U.S. account to another offshore account is contradicted

---

[1] It is further alleged that "90% of the stock in UEIL" was owned by Bassington, Ltd., a BVI shell company. Id. at ¶ 42. Bassington, in turn, was allegedly "set up" by "Credit Suisse's employees in Guernsey, the Chanel Islands...." *Id*. at ¶ 43.

by the Complaint's assertion that the funds in question were actually transferred through Nauru, not New York: "Those proceeds were transferred through a nominal account in the name of another offshore bank, First Trading Bank, incorporated in Nauru." *Id*. at ¶ 48.

16. Thus, the only alleged involvement of New York banks is, at most, as correspondent banks, and as discussed in the accompanying Memorandum of Law, the case law is clear that this is an insufficient nexus for personal jurisdiction over a foreign defendant.

**B. The Complaint Should Be Dismissed Since It is Based On a Theory That the Defendant Controlled Judgment Debtor UESU, Which Is Inconsistent With Plaintiff's Position In Numerous Prior Federal Cases**

17. Even a cursory review of UTICo's prior actions brought in various federal court demonstrates the fundamental inconsistency of the plaintiff's theory of liability in this case as compared to the other cases.

**The Massachusetts Action**

18. Although UTICo alleges in its Complaint that defendant was, in essence, UESU's "mastermind," and that she was the individual primarily responsible for the alleged transfer of UESU's assets out of the company, UTICo painted a quite different picture in its motion papers filed in UTICo v. UESU, Docket 97 cv 12180 (the Massachusetts Action) leading to the UESU Judgment.

19. For example, on March 23, 2005, UTICo's President, Dr. Youry A. Lambert, submitted an unsworn "Affidavit in Support of Motion for Judgment by Default." *See* **Exhibit 1** attached hereto. In this Affidavit, UTICo's President (Dr. Lambert) represented that Pavlo Lazarenko and Petro Kiritchenko were the 'major beneficiaries of UESU frauds":

> The criminal case of Lazarenko brought by U.S. Government in May of 2000, ultimately resulted on June 3 of 2004 in the verdict of guilty on 29 Counts (involving money laundering and other illegal activities with about $30 million), in the action <u>U.S. v. Pavlo Lazarenko</u>, CR00-0284 MJJ in the same District for Northern California, as indicated above.
>
> At the trial of Lazarenko from March 15 through June 3, 2004, his former assistant and money launderer of proceeds from UESU, Kiritchenko, testified against Lazarenko, made admissions, having pled guilty under the plea agreement , on one Count of transportation of stolen property (for $8.2 million), in the action <u>U.S. v. Peter Kiritchenko</u>, CR00-0270 MJJ in the same U.S. District Court for Northern California, San Francisco Venue. Kiritchenko specifically testified that that amount of $8.2 million came from UESU frauds.
>
> According to the trial records in the above trial in March to June of 2004 and independent information obtained by UTICO, **<u>Lazarenko and Kiritchenko, have been the major beneficiaries of UESU frauds.</u>** In particular, Lazarenko received more than $200 million from UESU, which assets have been subsequently frozen in Antigua, Guernsey, Liechtenstein, Austria and Lithuania.

*See* **Exhibit 1** at ¶s 9-11 (emphasis added).

20.  In this March 23, 2005 Affidavit, Dr. Lambert also alleges that "the principals of UESU …allegedly misappropriated altogether about $2.1 billion from Ukraine, derived from natural gas settlements …[which] were routed by UESU through parent-subsidiary links to London, British Virgin Islands, and Guernsey, ending on the personal and numbered accounts of UESU co-conspirators." *Id.* at ¶ 20.

21.  Curiously, in this March 23, 2005 Affidavit, Yulia Tymoshenko is not named as one of the alleged "principals" of UESU who are "identified" by Dr. Youry Lambert as having allegedly misappropriated billions of dollars from UESU and diverted said monies to their own bank accounts. *Id.* Rather, Dr. Lambert identifies eight named principals of UTICo (none of which are Yulia Tymoshenko) who he alleges were either charged and/or convicted of various crimes, including former Prime Minister Pavlo

Lazarenko. *Id*.  However, Dr. Lambert's affidavit never mentions Yulia Tymoshenko at all in his lengthy discussion of the alleged misdeeds by UESU and its principal. *Id*.

22.     When UTICo filed its Amended Answer and Counterclaim against UESU in the Massachusetts Action on February 7, 1998, it already knew (or at least alleged) that "UESU is presently in the process of disbanding and dissolving itself, all as indicated by former Prime Minister <u>Pavlo Lazarenko, who allegedly owns a controlling interest in UESU</u>…" *See* Mot. to Intervene, Exhibit C, attached hereto as **Exhibit 2** at ¶ 107 (emphasis added).

23.     UTICo further alleged in its pleadings in the Massachusetts Action that UESU's filing of the complaint against it was a bad faith attempt to "buy time" while UESU "disappears, and its assets outside of Ukraine are further distributed to its principals and United Energy International Ltd. in London, safe from prosecutors in Ukraine and other creditors to which UESU and its principals are liable." *Id.* at ¶ 108.

24.     Despite the fact that it knew that UESU was apparently "dissolving" and that it was, therefore, unlikely that it would be able to collect on its judgment against UESU itself, it appears that UTICo basically abandoned the Massachusetts Action in or about December 2006. *See* Docket Sheet, attached hereto as **Exhibit 3**.

25.     In another lengthy affidavit, dated June 9, 2005, filed by Dr. Lambert in the Massachusetts Action (this one under the name "George A. Lambert"), Dr. Lambert again failed to allege, or even to mention, Yulia Tymoshenko in connection with the various individuals that UTICo and Dr. Lambert allege as having dominated and controlled UESU in furtherance of their alleged fraudulent scheme and conspiracy. *See* **Exhibit 4** attached hereto.

26.     In addition, Dr. Lambert asserts, in this second affidavit, that four representatives of UESU allegedly" assaulted" and attempted to intimidate him during a confrontation in a London hotel room on August 4, 1997. *Id.*, **Exhibit 4** at ¶s 23-25. Upon information and belief, this altercation appears to explain, at least in part, the deep personal interest in the litigation and animus towards every individual, including the named plaintiff here, who he now believes was associated in any way with UESU.

27.     In the Massachusetts Action, Roman A. Plyamovaty also filed an unsworn "Affidavit," dated June 9, 2005, in which he, like Dr. Lambert, failed to mention the name of Yulia Tymoshenko in connection with the alleged misdeeds of UESU. *See* **Exhibit 5** attached hereto.  He does, however, prominently mention Kirichenko and Lazarenko as the prime movers behind the alleged "frauds" perpetrated by UESU. *Id.* at ¶s 14-15.

28.     In his June 9, 2005, Mr. Plyamovaty discloses the fact that UTICo acted as an agent of the Ukraine government, and were issued a Power of Attorney by the Prosecutor General's Office of Ukraine. *Id.* at ¶ 7, which is, upon information and belief, one of the reasons why UTICo filed the Complaint in this action and, moreover, as part of its Motion to Intervene in the related case in this District, attached a proposed "Answer" to the Complaint in that case that denied each and every allegation of the Complaint that alleges human rights violations and political corruption on the part of the current Ukraine administration. In short, the plaintiff here appears to be acting as the <u>de facto</u> agent of the current Ukraine government, and is pursuing this litigation as a "proxy."

29.     In any event, in the Massachusetts Action, UTICo inexplicably never pursued its claims against Tymoshenko or any of the individuals that it claimed were in control of UESU, either on an "alter ego" or "piercing the corporate veil" theory. *Id.*

9

**The D.C. Action**

30.     Although UTICo now, in its Complaint filed here, portrays Tymoshenko as having custody and control of virtually all of USEU's assets, it took a diametrically opposite position in the District of Columbia district court litigation in which it sought to intervene, <u>United States v. All Funds on</u> <u>Deposit at Bank Julius Baer & Company, Ltd., Guernsey Branch, Account Number</u> <u>121128,</u> Case No. 1:04-cv-00798-PLF, 664 F. Supp. 2d 97 (D.D.C. 2009)("the D.C. Action").

31.     At a court appearance in the D.C. Action on September 4, 2008, "judgment creditor" UTICo was represented by "Mr.George Alex Lambert," who identified himself as counsel for UTICo, but neglected to also advise the Court that, as Dr. Youry Lambert a/k/a Dr. George Lambert, he was also the President of UTICo. See Transcript of 9/4/08, attached hereto as **Exhibit 6** at 16.

32.     At this court appearance in the D.C. Action, UTICo's counsel, Mr. Lambert, represented to the Court as part of his argument, that Lazarenko should be held liable for the UESU Judgment, "that Lazarenko was a 50 percent stakeholder, a general partner with regard to UESU," and that <u>"[h]e [Lazarenko] obtained approximately 50 percent of all the proceeds and revenues from UESU and of all the assets</u>." *Id*. at p. 21 (emphasis added).

33.     Mr. Lambert further represented in the D.C. Action that the "issue" in the Massachusetts Action "was that Lazarenko was cited in the pleadings in Boston more than one hundred times, and he was always identified as a co-conspirator and a general partner of UESU." *Id.*

34. Other than the fact that UTICo's goal in the D.C. Action was to hold Lazarenko responsible for the UESU Judgment, while its goal here is to hold Tymoshenko responsible, it is difficult (and indeed impossible) to reconcile Mr. Lambert's September 2008 representations in the D.C. Action *(i.e.,* that Lazarenko had obtained 50% of UESU's assets) with plaintiff's representations made in its Complaint filed in this case that "Tymoshenko has put under her control the assets of UESU, to make UESU judgment-proof against the judgment held by [UTICo]." *See* UTICo's Complaint at ¶

35. Following UTICo's appearance in the D.C. Action, it filed various voluminous pleadings and motions that tended to dominate the proceedings, forcing the United States to twice file motions for judgment on the pleadings against UTICo. *See* Docket Sheet, attached hereto as **Exhibit 7**.

36. The district court in the D.C. Action granted the government's second motion by Opinion and Order dated March 25, 2011. *See* **Exhibit 8** attached hereto. In its opinion, the court noted that UTICo had filed a veritable blizzard of pleadings and motions in the matter. *Id.* at p. 2, ftnt 1. It was further noted that, after a hearing on the government's motion, UTICo "submitted several notices purporting to identify 'new authority' applicable to its claims." *Id.* The court observed that it "had reviewed the 'new' authorities identified by UTICo, but finds that they do not stand for the propositions that UTICo claims they do." *Id.*

37. In granting the government's motion and dismissing UTICo's claim, the district court in the D.C. Action further noted as follows, regarding UTICo's <u>modus operandi</u> and litigation strategy:

11

> UTICo has advanced a wide variety of theories under which it supposedly has standing to participate in this litigation; indeed, each new filing from UTICo seems to include new theories, even if the factual allegations upon which those theories rely appear nowhere in either UTICo's currently operative or proposed amended pleadings. Those theories, although numerous, are also profoundly unpersuasive, whether based on the first amended claim and answer or the second amended set of pleadings that UTICo seeks leave to file.

See **Exhibit 8** at 12.

38. In discussing UTICo's "constructive trust" theory, the court in the D.C. Action opined that "[u]nsurprisingly, given the cursory and at times incoherent discussion of constructive trust contained in UTICo's motion papers …UTICo does not make any attempt to identify the state under which law it is supposedly the beneficiary of a constructive trust over defendant assets." *Id.* at 17.

**The California Actions**

39. In other unsuccessful attempts to collect on UESU Judgment against UESU, UTICo and Mr. George Lambert a/k/a Dr. Youry Lambert a/k/a Youry Petchenkine have also either filed or attempted to intervene in several ill-fated actions in the United States District Court for the Northern District of California. For example, UTICo initiated several ancillary proceedings seeking to assert its claim to the forfeited funds of Pavel Lazarenko, claiming that its interest in the funds was superior to that of the United States. *See, e.g.*, United States v. Pavel Lazarenko, No. C 00-00284 (U.S.D.C., N.D.Cal.),UTICo v. Lazarenko, 3:06-mc-80086, (N.D.Cal.2006) (*see* Docket Sheet attached hereto as **Exhibit 9**),  and UTICo v. Dugsbery Inc., No. 08-cv-03632 ( N.D. Cal. 2008) (*see* Docket Sheet attached hereto as **Exhibit 10**).

40. In granting the government's motion to dismiss, the district court, in U.S. v. Lazarenko, noted that no court had agreed with UTICo's claim that UESU and

Lazarenko were "one and the same," or that UTICo's judgment against UESU was collectable against Lazarenko's assets (or anyone else's). *See* Order re Motion to Dismiss, dated March 10, 2009, attached hereto as **Exhibit 11** at p. 4, ftnt 1. *See also*, U.S. v. Lazarenko, 575 F. Supp. 2d 1139 (N.D.Cal. 2008).

41. In denying UTICo's claims, the district court noted that there was yet another action that UTICo had filed in the same district , where UTICo's claims in that case were dismissed by way of a summary judgment motion. See Universal Trading & Investment Co. v. Kiritchenko, C 99-3071. *Id.* at 5.

42. In UTICo v. Dugsbery Inc., the district court for the Northern District of California, by order dated January 16, 2009, also dismissed UTICo's claims that Lazarenko was an "alter ego" of UESU such that he should be held personally liable for the UESU Judgment. *See* **Exhibit 12** attached hereto at 11-12. The district court further commented on the "long and particularly contentious history" of the litigation. *Id*. at 1.

43. In UTICo v. Dugsbery Inc., UTICo and Mr. Lambert barely escaped being sanctioned pursuant to Rule 11, where the motion for sanctions was denied solely on the technical grounds that a copy of the sanctions motion had not been served on UTICo and its counsel (including Mr. Lambert) prior to its filing. *See* Order Denying Motions for Reconsideration and Sanctions, dated April 5, 2011, attached hereto as **Exhibit 13** at 6-7.

44. In short, UTICo's Complaint in this case is but its latest attempt in a long line of cases where it, and its' counsel, have vainly tried to collect on the UESU Judgment by filing Complaints and/or seeking to intervene in various proceedings on the theory that Lazarenko, Kiritchenko, (and now, alternatively, Tymoshenko) so dominated and controlled the Company that the judgment against UTICo is collectable against them

individually. Such blatant forum shopping and assertion of inconsistent positions in different federal courts should not be permitted, and the Complaint here should be dismissed. Each district court that has addressed the issue has rejected UTICo's dubious theories, and there is nothing presented by this Complaint that should lead to a contrary conclusion here.

**WHEREFORE,** it is respectfully requested (a) that defendant's motion to dismiss be granted, (b) that UTICo's Complaint be dismissed, and (c) that the Court grant such other and further relief as this Court deems just and proper.

Dated: New York, New York
        October 5, 2012

_____/s/_____
**KENNETH F. McCALLION** (Bar # KFM-1591)
McCallion & Associates LLP
100 Park Avenue – 16th floor
New York, NY 10017-5538
(646) 366-0880

*Attorneys for Defendant Yulia Tymoshenko*