```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- x
UNIVERSAL TRADING & INVESTMENT CO.,       :
INC.                                      :
                                          :
           Plaintiff,                     :
                                          :
     -against-                            :    11 Civ. 7877 (PAC)
                                          :
YULIA TYMOSHENKO                          :
                                          :    OPINION & ORDER
           Defendant                      :
-------------------------------------------------------------- x
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: December 12, 2012

HONORABLE PAUL A. CROTTY, United States District Judge:

Plaintiff Universal Trading & Investment Co., Inc. ("Universal Trading"), a Massachusetts corporation, is the judgment creditor of an $18,344,480 default judgment against United Energy Systems of Ukraine, PFG ("United Energy"). Compl. at ¶ 2; Nov. 4, 2011, Dkt. No. 1; United Energy Sys. of Ukraine, PFG v. Univ. Trading & Inv. Co., Inc., Registration of Foreign Judgment, No. 11-mc-249-P1 (S.D.N.Y. July 19, 2011), Dkt. No. 1. Defendant Yulia Tymoshenko, is a Ukrainian national. Compl. at ¶ 3. She is the former president of United Energy and served in many high-ranking government positions in the Ukraine. Id. at ¶¶ 2-3. Universal Trading alleges that Tymoshenko was involved in a complicated bribery and money laundering scheme involving United Energy's assets. Universal Trading now seeks to collect the judgment debt entered against United Energy from Tymoshenko because she is alleged to have "converted, withheld and fraudulently transferred" over $2 billion from United Energy for the

1

purpose of "avoiding creditors and hiding assets . . . in various jurisdictions."[1]  Id. at ¶¶ 17-18.  Tymoshenko has moved to dismiss the complaint for lack of personal jurisdiction.  For the reasons discussed below, her motion is granted.

## DISCUSSION

I.  **The Record**

In considering a motion to dismiss, a court must accept all factual allegations in the complaint as true and draw reasonable inferences in favor of the plaintiff.  Erickson v. Pardus, 551 U.S.89, 93-94 (2007).  Further, courts are "normally required to look only at the allegations on the face of the complaint," Roth v. Jennings, 489 F.3d 499, 510 (2d Cir. 2007), though they may also consider "documents attached to the complaint or incorporated into it by reference, any documents that are integral to the Plaintiff's allegations even if not explicitly incorporated by reference, and facts of which the Court may take judicial notice." Gilmartin v. Marsh & McLennan Cos., Inc., No. 10 Civ. 8158, 2012 WL 2196114, at *5 (S.D.N.Y. June 15, 2012) (citing ATSI Commc'ns, Inc. v. Shaar Fund Ltd., 493 F.3d 87, 89 (2d Cir. 2007)).

Plaintiff's opposition to the motion to dismiss is replete with factual assertions that do not fit into any of these categories.  The Court declines to take these assertions into account because "[n]ew facts and allegations, first raised in a Plaintiff's opposition papers, may not be considered" in deciding a motion to dismiss.  Simone v. U.S., No. 09 Civ. 3904, 2012 WL 4891617, at *6 (E.D.N.Y. Oct. 9, 2012) (citations omitted).  Similarly, the Court would err if it "consider[ed the] affidavits and exhibits submitted . . . in ruling on [the] motion to dismiss," as that would constitute "improper[] reli[ance] on matters outside the pleadings." Friedl v. City of New York, 210 F.3d 79, 83-84 (2d Cir. 2000) (internal quotations omitted)

---

[1] Universal Trading has brought a separate action on similar grounds against numerous Credit Suisse entities and employees, which this Court has also dismissed.  See Univ. Trading & Inv. Co. v. Credit Suisse (Guernsey) Ltd., No. 12 Civ. 198 (S.D.N.Y.) Dkt. No. 43.

Universal Trading has also requested that the Court take judicial notice of voluminous filings, all of which are opposed by Tymoshenko. See Dkt. Nos. 24, 27. Courts may only take judicial notice facts that are "generally known within the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot be reasonably questioned," Fed. R. Evid. 201(b), and must be cautious in doing so "because the effect . . . is to deprive a party of the opportunity to use rebuttal evidence, cross-examination, and argument to attack contrary evidence." Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc., 146 F.3d 66, 70 (2d Cir. 1998). Universal Trading requests that the Court take notice of statements made in several filings in other litigation. While "'[a] court may take judicial notice of a document filed in another court . . . to establish the fact of such litigation and related filings,'" it may not take judicial notice "'for the truth of the matters asserted in the other litigation.'" Global Network Commc'ns, Inc. v. City of New York, 458 F.3d 150, 157 (2d Cir. 2006) (quoting Int'l Star Class Yacht Racing, 146 F.3d at 70). The Court therefore declines to take notice of factual assertions in Requests for Judicial Notice A, B, C, E, F, G, I, J, L, and M. It is unnecessary for the court to determine the propriety of Requests for Judicial Notice D, H and K, which are neither cited nor relied upon in Universal Trading's papers.

## II. Personal Jurisdiction

### A. Legal Standard

The Court has subject matter jurisdiction as a result of the parties' diversity of citizenship. Compl. at ¶ 6. Accordingly, personal jurisdiction is governed by New York law, D.H. Blair & Co. v. Gottdiener, 462 F.3d 95, 104 (2d. Cir. 2006), which provides for personal jurisdiction over out-of-state defendants based on general jurisdiction under NYCPLR § 301 ("Section 301") or long-arm jurisdiction under NYCPLR § 302 ("Section 302"). Universal

Trading "carries the burden of demonstrating that jurisdiction exists," Penachio v. Benedict, 461 Fed. Appx. 4, 5 (2d Cir. 2012) (citing Robinson v. Overseas Military Sales Corp., 21 F.3d 502, 507 (2d Cir. 1994)), and appears to argue that the Court has both long-arm and general jurisdiction.  See Pl.'s Opp'n at 4, Oct. 22, 2012, Dkt. No. 23.

Section 301 grants jurisdiction over a foreign party "engaged in such a continuous and systematic course of 'doing business' [in New York] as to warrant a finding of its 'presence' in this jurisdiction." Laufer v. Ostrow, 434 N.E.2d 692, 649 (N.Y. 1982) (quoting McGowan v. Smith, 419 N.E.2d 321, 323 (N.Y. 1981)).  This requires a finding that they are "'present' in the state 'not occasionally or casually, but with a fair measure of permanence and continuity.'" Landoil Resources Corp. v. Alexander & Alexander Servs., 77 N.Y.S.2d 28, 34 (1990).

Section 302(a)(1) provides that a court may exercise personal jurisdiction over a non-domiciliary who "transacts any business within [New York], provided that the cause of action arises out of the transaction of business." Deer Consumer Prods., Inc. v. Little, 938 N.Y.S.2d 767, 776 (N.Y. Sup. Ct. 2012) (citing Lebel v. Tello, 707 N.Y.S.2d 426, 426 (1st Dep't 2000)). To satisfy Section 302(a)(1), "there must be 'an articulable nexus or a substantial relationship between transactions occurring within the state and the cause of action sued upon.'" Tamam v. Fransabank Sal, 677 F. Supp. 2d 720, 726 (S.D.N.Y. 2010) (quoting Sunward Elecs., Inc. v. McDonald, 362 F.3d 17, 23 (2d Cir. 2004)).  In other words, "jurisdiction will not extend to cover defendants with nothing more than petty contacts to the state." Id.

   B.    *Analysis*[2]

In attempting to demonstrate this Court's jurisdiction, Universal Trading asserts several connections between Tymoshenko and New York that appear nowhere in the Complaint.  First,

---

[2] The Court does not address Universal Trading's extensive elaboration on acts having no relationship with the State of New York.

4

fifteen years ago in 1997, Tymoshenko allegedly transferred $460,000 into an account held by Bassington, Ltd., United Energy's corporate parent, in New York. Pl.'s Opp'n at 2, 3, 13-15. Second, Tymoshenko allegedly "controlled [eight] American shell corporations including [two] in the State of New York." Id. at 3, 15-16. Third, Tymoshenko was paid approximately $2.7 million by a New York corporation. Id. at 13. Fourth, in her capacity as the president of Pivden Bank, a Ukrainian company, she allegedly controlled two bank accounts in New York. Id. at 20-21. Fifth, she is alleged to have participated in a conspiracy with former Ukrainian Prime Minister Pavlo Lazarenko and unspecified agents in New York.[3] Id. at 9-11. None of these claims may be considered because of Universal Trading's failure to include them in the Complaint. See Friedl, 210 F.3d at 83-84; Simone, 2012 WL 4891617 at *6.

Universal Trading contends that Tymoshenko is also subject to jurisdiction in New York as a result of hiring public relations and lobbying professionals in the United States and having brought another suit in this Court. Pl.'s Opp'n at 21, 23-24 (citing Tymoshenko v. Firtash, No. 11 Civ. 1794 (S.D.N.Y.)). Universal Trading cites Chevron Corp. v. Donziger, 768 F. Supp. 2d 581 (S.D.N.Y. 2011) (analyzing jurisdiction under both NYCPLR 301 and 302(a)(1)), but this case is wholly inapposite. The Chevron case itself was related to the previous litigation that had been brought by the defendants asserting lack of personal jurisdiction in Chevron, 768 F. Supp. 2d at 642-43, whereas Universal Trading acknowledges that this Court previously denied its motion to intervene in Tymoshenko v. Firtash because "the scope of [Tymoshenko's] complaint [was] unrelated to [Universal Trading's] judgment collection." Compl. at ¶ 11. Moreover, the defendants in Chevron employed an agent whose activities in New York on their behalf were

---

[3] Notably, Plaintiff's brief fails to specify who the New York agents were, what actions they took, or why their actions should be binding on Tymoshenko. Rather, it relies on conclusory statements without discussing any underlying facts. Even were such a conspiracy alleged in the Complaint, such "'bland assertion[s] of conspiracy . . . [are] insufficient to establish jurisdiction.'" In re Terrorist Attacks on September 11, 2001, 349 F. Supp. 2d 765, 805 (S.D.N.Y. 2005) (quoting Lehigh Valley Indus., Inc. v. Birenbaum, 527 F.2d 87, 93-94 (2d Cir. 1975)).

"enormous, so much so that the Court infer[red] that he has done little over the past eighteen years other than pursue [their] interests" and whose "firm has been the functional equivalent of [their] New York office." 768 F. Supp. 2d at 641. Universal Trading has not alleged that Tymoshenko had any agents or representatives playing a similar role on her behalf in New York, but only that she "contracted public relations and consulting firms in the U.S.," Compl. at ¶ 11, and "ordered several public relations firms in the USA to stage a media campaign to counter the criminal case against her." Id. at ¶ 95. Yet there are no allegations regarding the scope of the efforts taken on her behalf by these agents, nor, more importantly, does Universal Trading allege that any such efforts were made in New York. Chevron thus provides no support for asserting jurisdiction over Tymoshenko.

Finally, Universal Trading alleges that Tymoshenko is subject to personal jurisdiction because she "did business in New York by directing numerous . . . transactions, passing [through] bank accounts in New York."[4] Compl. at ¶ 9; see also id. at ¶¶ 3, 7, 46-50. While the Complaint appears to reference numerous such transactions involving a variety of New York banks, see id. at ¶ 9, details are only provided regarding transactions sent from the Slaviansky Bank in the Ukraine, id. at ¶ 48, "through" Bankers Trust Bank in New York and First Trading Bank in the Republic of Nauru, id. at ¶¶ 47-48, to Eurofed Bank, in Antigua. Id. at ¶¶ 47, 50. No cited case supports United Trading's argument that the passage of money "through" New York banks is sufficient to confer jurisdiction over Tymoshenko. Nor has the Court's research revealed any cases in which a foreign individual holding foreign accounts has been found to be subject to jurisdiction in New York because their bank moved money through New York via a

---

[4] Though Universal Trading does not specify which section of the NYCPLR purportedly grants jurisdiction on this basis, it appears to be premised on NYCPLR 302(a)(1). See Dale v. Banque SCS Alliance S.A., No. 02 Civ. 3592, 2005 WL 2347853, at *3 (S.D.N.Y. Sept. 22, 2005); Correspondent Servs. Corp. v. J.V.W. Invs. Ltd., 120 F. Supp. 2d 401, 405 (S.D.N.Y. 2000).

correspondent account. Rather, it appears that courts have only found the banks themselves to be subject to jurisdiction where they have moved money through New York. See, e.g., Dale, 2005 WL 2347853, at *3; Correspondent Servs. Corp., 120 F. Supp. 2d at 405. Even in such cases, the Court of Appeals recently confirmed that New York law requires that "the defendant's use of a correspondent bank account in New York . . . was purposeful," which has not been alleged. Licci v. Lebanese Canadian Bank, SAL, No. 183, 2012 WL 5844997 (Nov. 20, 2012). Additionally, New York courts have long recognized that there are "significant policy reasons which caution against the exercise of personal jurisdiction based only on . . . a correspondent bank account." Int'l Housing Ltd. v. Rafidain Bank Iraq, 712 F. Supp. 1112, 1120 (S.D.N.Y. 1989); see, e.g., Sigmoil Resources v. Pan Ocean Oil Corp., 650 N.Y.S.2d 726, 726 (App. Div. 1996); Verlinden B.V. v. Central Bank of Nigeria, 488 F. Supp. 1284, 1298 (S.D.N.Y. 1980), rev'd on other grounds, 461 U.S. 480 (1983); see also Asahi Metal Indus. Co., Ltd. v. Superior Court, 480 U.S. 102, 115 (1987) ("Great care and reserve should be exercised when extending our notions of personal jurisdiction into the international field."). Given the lack of clear precedent on this issue and the policy rationale in favor of not extending jurisdiction over Tymoshenko based on the alleged banking transactions, the Court declines to do so.

## CONCLUSION

Tymoshenko's motion to dismiss the complaint for lack of personal jurisdiction is GRANTED. The Clerk of Court is directed to enter judgment and to terminate this case.

Dated: New York, New York
December 12, 2012

*So Ordered*

*Paul Crotty*
USDJ