UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| UNIVERSAL TRADING & INVESTMENT CO., INC. | : | |
| | : | |
| | : | |
| V. | : | CIVIL ACTION |
| | : | NO. 11-CV-7877 (PAC) |
| YULIA TYMOSHENKO | : | |
| ALEXANDER TYMOSHENKO | : | |
| ANDREY VAVILOV | : | |
| | : | |
| and DOES from 1 to 10 | : | |
| | : | |

**ANDREY VAVILOV'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO
DISMISS THE AMENDED COMPLAINT PURSUANT TO FEDERAL RULE 12(b)**

Respectfully submitted,

/s/ Matthew P. Feser
Matthew P. FESER
SALISBURY & RYAN
1325 Avenue of the Americas, 7th Fl.
New York, NY   10019
212-977-4660
212-977-4668 (fax)
mf@salisburyryan.com

Attorneys for defendant
Andrey Vavilov

/s/ James P. Golden
JAMES P. GOLDEN
Pennsylvania I.D. No. 32169
HAMBURG & GOLDEN, P.C.
1601 Market Street, Suite 3310
Philadelphia, PA   19103
215-255-8590
215-255-8583 (fax)
goldenjp@hamburg-golden.com
(Admitted Pro hac vice)

Attorneys for defendant
Andrey Vavilov

Date:   October 18, 2013

**TABLE OF CONTENTS**

Page

I.    INTRODUCTION                                                              1

II.   FACTS                                                                     2

      A.    Background                                                          3

      B.    Procedural History                                                 6

      C.    The Amended Complaint                                              7

      D.    Universal Trading's Similar Unsuccessful Litigation                8

III.  ARGUMENT                                                                10

      A.    The Amended Complaint Fails To State Any Claim Against            10
            Vavilov Upon Which Relief May Be Granted

            1.    Legal Standard Governing This 12(b) Motion                  10

            2.    This Court Lacks Personal Jurisdiction Over Andrey          11
                  Vavilov

            3.    Universal Trading Lacks Standing                            14

            4.    All Claims Are Barred By The Statute Of Limitations         15

            5.    The Turnover Claim Fails                                    16

            6.    The Unjust Enrichment Claim Fails                           19

            7.    The Constructive Trust/Equitable Lien Claims Fail           20

            8.    The Fraudulent Conveyance Claim Fails                       21

            9.    The Civil Conspiracy Claim Fails                            23

      B.    Violation of Fed. R. Civ. P. 15(a)(2) Warrants Dismissal          23

C.    Universal Trading's RICO Claims, If Asserted Against Vavilov,          24
      Would Fail

IV.   CONCLUSION                                                             25

## TABLE OF CITATIONS

**Cases**                                                                      Page

Abacus Fed. Sav. Bank v. Lim, 75 A.D.3d 472, 905 N.Y.S.2d 585, 588 (2010) ................       23

Abadin v. Marvel Entertainment, 2010 WL 1257519 (S.D.N.Y. March 31,
20110) (Crotty, J.) ...........................................................................................       20

Alexander & Alexander of New York, Inc. v. Fritzen, 68 N.Y.2d 968, 510
N.Y.S.2d 546 (N.Y. 1986) ................................................................................       23

Alliance Bond Fund, Inc. v. Grupo Mexicano de Desarrollo, S.A., 190 F.3d 16,
21 (2d Cir. 1999) .............................................................................................       17

Antian v. Coutts Bank (Switzerland), Ltd., 193 F.3d 85,88 (2d Cir. 1999)........................       25

Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1949–50 (2009).......................................       10

Bell Atlantic Corp. v. Twombly, 550 U.S. 544 , 572 (2007)...............................................       10

Bice v. Robb, 2012 WL 762168 (S.D.N.Y. March 9, 2012) (Crotty, J.) ...........................       20

Cambridge Literary Props., Ltd. v. W. Goebel Porzellanfabrik G.M.B.H. & Co.
KG, 448 F. Supp.2d 244,   263 n. 16 (D. Mass. 2006) .........................................       16

Camofi Master, 2011 WL 1197659, at *6 ........................................................................       22

Cargo Partner AG v. Albatrans Inc., 207 F. Supp.2d 86, 116 (S.D.N.Y. 2002),
aff'd, 352 F.3d 41 (2d Cir. 2003) .....................................................................       11

D.H. Blair & Co. v. Gottiener, 462 F.3d 95, 104 (2d Cir. 2006) ........................................       12

Deer Consumer Products v. Little, 938 N.Y.S.2d 767, 774-75, 35 Misc.3d 374,
381 (2012) .......................................................................................................       12-13

First Capital Asset Mgmt v. Satinwood, Inc., 385 F.3d 159, 162 (2d Cir. 2004) ................       24

Georgia Malone & Co., Inc. v. Ralph Rieder, 86 A.D. 3d 406, 926 N.Y.S.2d 494
(2011) ...............................................................................................................       19

Global Fin. Corp. v. Triarc Corp., 93 N.Y.2d 525, 530-31 (1999) .......................................       16

HBE Leasing Corp. v. Frank, 61 F.3d 1054, 1059 n. 5 (2d Cir.1995)..................................       22

H.J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 243...............................................       25

Hughes v. Equity Office Props. Trust, 245 Appx.88, 89 (2d Cir. 2007) .............................       16

In re First Cent. Fin. Corp., 377 F.3d 209, 212 (2d Cir.2004) ..........................................       20

In re Sharp Int'l Corp., 403 F.3d 43, 56 (2d Cir.2005)............................................ 22

Jerome M. Sobel & Co. v. Fleck, 2003 WL 22839799 at *6 (S.D.N.Y. Dec. 1, 2003) ................................................................................................................... 25

Kirch v. Liberty Media Corp., 449 F.3d 388, 401 (2d Cir. 2006)........................... 23

Landoil Resources Corp. v. Alexander & Alexander Servs., 77 N.Y.S.2d 28, 34 (1990) ...................................................................................................................... 12

Laufer v. Ostrow, 434 N.E.2d 692, 649 (N.Y. 1982) ............................................ 12

Lebel v. Tello, 707 N.Y.S.2d 426, 426 (1ˢᵗ Dep't 2000) ........................................ 13

M & B Joint Venture, Inc. v. Laurus Master Fund, Ltd., 12 N.Y.3d 798, 800, 907 N.E.2d 690, 692 (2009)........................................................................................... 21

Mandarin Trading Ltd. v. Wildenstein, 16 N.Y.3d 173, 919 N.Y.S.2d 465 (2011) ............. 19

Martha Graham Sch. & Dance Found., Inc. v. Martha Graham Ctr. of Contemporary Dance, Inc., 380 F.3d 624, 646 (2d Cir.2004) ............................... 20

McGowan v. Smith, 419 N.E.2d 321, 323 (N.Y. 1981) ......................................... 12

Metro. Life Ins. v. Robertson-Ceco Corp., 84 F.3d 560, 566 (2d Cir. 1996) ...... 11

Midwest Memorial Group, LLC v. Int'l Fund Services (Ireland) Ltd., 2011 WL 4916407, *3 (S.D.N.Y. October 17, 2011) (Crotty, J.) ...................................... 10, 23

Mississippi Band of Choctaw Indians v. Holyfield, 490 U.S. 30,48 (1989)........ 12

Norex Petroleum Ltd. v. Access Indus., Inc., 631 F.3d 29, 32-33 (2d Cir. 2010) ............... 25

Pallian v. Metlife Bank, Nat. Ass'n, 2013 WL 3190327 (E.D.N.Y. June 20, 2013)............ 21

Penachio v. Benedict, 461 Fed. Appx. 4, 5 (2d Cir. 2012) .................................... 12

Pincione v. D'Alfonso, 2011 WL 4089885. *5 (S.D.N.Y) (Crotty, J.) ................. 24

Republic of Iraq v. ABB AG, 2013 WL 441959, at *21 (S.D.N.Y. Feb. 6, 2013) (Stein, J.) .............................................................................................................. 25

Robinson v. Overseas Military Sales Corp., 21 F.3d 502, 507 (2d Cir. 1994) .................... 12

Scivoletti v. Marsala, 61 N.Y.2d 806, 809, 473 N.Y.S.2d 949, 462 N.E.2d 126 [1984] ...................................................................................................................... 21

Sunward Elecs., Inc. v. McDonald, 362 F.3d 17, 23 (2d Cir. 2004)...................... 13

Tamam v. Fransabank Sal, 677 F. Supp.2d 720, 726 (S.D.N.Y. 2010) ................ 13

Teichman v. Community Hosp. of W. Suffolk, 87 N.Y.2d 514, 520, 640
N.Y.S.2d 472, 663 N.E.2d 628 [1996].................................................................. 21

Tymoshenko v. Firtish, 2013 WL 1234943, * 2 (S.D.N.Y. March 27, 2013) ...................... 11

U.S. Bank N.A. v. Lieberman, 98 A.D.3d 422, 950 N.Y.S.2d 127 (1st Dept 2012) ............. 21

United Energy Systems of Ukraine, PFG v. Universal Trading & Inv. Co., Inc.,
No. 97 Civ. 12180 (D. Mass. 2005) .................................................................. 1

United States v. All Assets Held at Julius Baer & Co., Ltd., 772 F. Supp.2d 191,
193 (D. Columbia 2011) .................................................................................. 9

United States v. Lazarenko, 564 F.3d 1026, 1032 (9th Cir. 2009)........................................ 3

United States v. Liquidators of European Federal Credit Bank, 630 F.3d 1139 (9th
Cir. 2011) ........................................................................................................ 3

Universal Trading & Inv. Co., Inc. v. Bureau for Representing Ukrainian
Interests In International And Foreign Courts, 2013 WL 4051880, * 1 (1st Cir.
August 12, 2013)............................................................................................. 3-4

Universal Trading & Inv. Co., Inc. v. Bureau for Representing Ukrainian
Interests in International and Foreign Courts, 898 F. Supp.2d 301, 319 (D. Mass.
2012) ............................................................................................................... 5, 15

Universal Trading & Inv. Co., Inc. v. Credit Suisse (Guernsey) Ltd., 2013 WL
1404805 (S.D.N.Y. April 5, 2013) (Crotty, J.) ................................................ 8

Universal Trading & Inv. Co., Inc. v. Credit Suisse (Guernsey) Ltd., 2012 WL           9-11, 13,
6186598 (S.D.N.Y. Dec. 12, 2012) (Crotty, J.) .............................................. 15-16

Universal Trading & Inv. Co., Inc. v. Dugsbery, Inc., 2011 WL 62162, * 1 (N.D.
Cal. Jan. 7, 2011) ............................................................................................ 4, 15

Universal Trading & Inv. Co., Inc. v. Kiritchenko, 2007 WL 2669841 (N.D. Cal.
Sept. 7, 2007), aff'd, 346 Fed. Appx. 232, 232 (9th Cir. 2009) ...................... 5, 15

Universal Trading & Inv. Co., Inc. v. Kiritchenko, 2008 WL 2445073 (N.D.CA
June 16, 2008) ................................................................................................. 5

Universal Trading & Inv. Co., Inc. v. Lazarenko, 352 Fed. Appx. 210 (9th Cir.
2009) ............................................................................................................... 8-9

Universal Trading & Inv. Co., Inc. v. Tymoshenko, 2013 WL 1500430, *2 n.1
(S.D.N.Y. April 10, 2013) ................................................................................ 6-8, 24

Universal Trading & Inv. Co., Inc. v. Tymoshenko, 2012 WL 6186471, * 2-3
(S.D.N.Y. Dec. 12, 2012) ................................................................................ 6, 12-13

Watson v. Riptide Worldwide, Inc., 2013 WL 417372, 6 (S.D.N.Y. Feb. 4, 2013)
(Crotty, J) ........................................................................................................... 22

**Statutes and Rules**

Fed. R. App. P. 46(b) and (c) ........................................................................... 9

Fed. R. Civ. P. 8 ............................................................................................... 14

Fed. R. Civ. P. 9(b) ........................................................................................... 2, 10-11, 19, 22

Fed. R. Civ. 15(a)(2) ......................................................................................... 23

Fed. R. Civ. P. 69(a)(1) .................................................................................... 16

Fed. R. Civ. P. 59(e) ......................................................................................... 6

NYCPLR § 202 ................................................................................................. 16

NYCPLR § 301 ................................................................................................. 12, 14

NYCPLR § 302 ................................................................................................. 12-14

NYCPLR.§ 5225(b) ........................................................................................... 16, 19

Mass. Gen Laws ch. 260, § 2A ....................................................................... 15-16

Section 1962(c) .................................................................................................. 24

## I.  INTRODUCTION

This is a collection case brought by Universal Trading and Investment Co., Inc. ("Universal Trading" or "UTICo") initially against Yulia Tymoshenko ("Tymoshenko") and Alexander Tymoshenko[1]  (and now, also against Andrey Vavilov ("Vavilov")).   Universal Trading seeks to collect on its default judgment, for $18,344,480, obtained in 2005 against non-party United Energy Systems of Ukraine, PFG ("United Energy" or "UESU") in the United States District Court for the District of Massachusetts.[2]   United Energy Systems of Ukraine, PFG v. Universal Trading & Inv. Co., Inc., No. 97 Civ. 12180 (D. Mass. 2005).   Vavilov has nothing to do with the subject debt.

Universal Trading is attempting to collect the *$18 million* default judgment against defendants, claiming that the Tymoshenkos allegedly caused United Energy to transfer United Energy's assets to "avoid creditors and frustrate the recovery" of *over $2 billion* in assets. (Amended complaint, ¶ 21).   In a transparent attempt to assert personal jurisdiction over the Tymoshenkos, Vavilov is falsely alleged to have received, *16 years ago*, $10 million from--the amended complaint is unclear--either United Energy, the Tymoshenkos, United Energy's parent UEIL, Louis D'Or, or Angora Management, Ltd.   (Amended complaint, ¶¶ 3, 5, 11, 59-62).

---

[1]  Alexander Tymoshenko was never served with the complaint or amended complaint and appears not to be part of this case at this time.   References to "Tymoshenko" throughout this memorandum of law are to Yulia.

[2]  Universal Trading also seeks collection of a second judgment that it obtained in 2012 against "Bassington, Inc." (Am. Complaint, ¶1) but, the amended complaint appears to allege that Vavilov is an alleged "garnishee" only on the United Energy judgment.   (Amended complaint, ¶5, "Vavilov is a garnishee of United Energy's assets for $10 million, which may be used to partially satisfy the United Energy judgment.").   For this reason, this memorandum addresses the United Energy judgment.   To the extent that Universal Trading also seeks collection from Vavilov of the Bassington judgment, such claims should be dismissed for all the same reasons set forth in this motion.

Vavilov is further alleged to have used half of this money to buy an apartment in New York in 1997.

Vavilov moves to dismiss the entire amended complaint (Golden declaration, exhibit 2).   Vavilov denies virtually every paragraph that relates to him, though except for a few paragraphs that are specifically addressed and can be denied at this stage, the well pleaded allegations must be accepted as true.

First, there is no basis for this Court to exercise personal jurisdiction over Vavilov in New York.   Second, all of the claims against Vavilov are barred by the applicable statutes of limitations.   Third, even if there were personal jurisdiction over Vavilov and the statute of limitations did not bar to Universal Trading's claims, none of the claims are adequately pled. Each of the claims fails to allege one or more necessary elements and, because all are based upon a purported fraudulent scheme, are not pled with the specificity required by Fed. R. Civ. P. 9(b).

## II.   FACTS

The 297-paragraph amended complaint is an untidy delivery of allegations pertaining to parties and transactions that have nothing to do with the underlying claims and is virtually incomprehensible.   Once the irrelevant is parsed from the whole, it is clear that Universal Trading has no viable claim against Vavilov and the amended complaint should be dismissed, like the string of similar cases Universal Trading has unsuccessfully brought against all sorts of persons and entities in an attempt to collect for services it claims it rendered to *its client* United Energy in the mid-1990s, before it switched sides to represent the Ukrainian government *against* its client United Energy.   (Amended complaint, ¶ 113).

And so this tale begins about 20 years ago . . .

A.      **Background**

Universal Trading is a Massachusetts corporation formed in 1993 (amended complaint ¶ 2) that engages in "international asset recovery operations."   Universal Trading & Inv. Co., Inc. v. Bureau for Representing Ukrainian Interests In International And Foreign Courts, 2013 WL 4051880, * 1 (1st Cir. August 12, 2013); Amended complaint, ¶ 2.   In 1993, discussions began that resulted in Universal Trading entering into a contract in April 1994 with an entity known as Cube, Ltd. (United Energy's predecessor) to assist Cube in the recovery of about $1.3 million it lost on a delivery of ferrous metals to China.    (Amended complaint, ¶¶ 22-23).

Universal Trading believed it uncovered theft and fraud by Cube/United Energy of the very money Universal Trading claimed it recovered *for* United Energy. [3]    (Amended complaint, ¶ 120).   Universal Trading reported its own client to Ukrainian authorities, and consequently, Universal Trading had a new client, the Ukrainian Prosecutor General's Office ("UPGO"), and its charge was to recover "billions" of assets allegedly expatriated from Ukraine by United Energy.   Amended complaint, ¶¶ 21, 120; Universal Trading & Inv. Co., Inc. v.

---

[3]  In United States v. Lazarenko, 564 F.3d 1026, 1032 (9th Cir. 2009), Pavel Ivanovich Lazarenko was acquitted on charges relating to United Energy.   But see inconsistent allegations here, amended complaint, ¶ 53.   In U.S. v. Lazarenko, "[t]he district court ruled that the government failed to prove that there was fraud in Lazarenko's alleged dealings with UESU, that Lazarenko's failure to inform the Ukrainian people that he was receiving money from UESU was a material omission in support of the government's property fraud theory, or that there was material harm to support the theory that UESU's dealings constituted honest services fraud. The court also held that the money laundering charges could not rest on the property fraud theory with respect to UESU."   Id. at 1032.   Indeed "[n]o court . . .   has ruled that Lazarenko and UESU are one and the same, or that UESU is subject to the forfeiture proceedings initiated against Lazarenko."   United States v. Lazarenko, 610 F. Supp.2d 1063, 1067 n. 1 (N.D. Cal. 2009), rev'd on other grounds, United States v. Liquidators of European Federal Credit Bank, 630 F.3d 1139 (9th Cir. 2011).   Here, Universal Trading alleges the same government-failed United Energy fraud and money laundering scheme but against Tymoshenko (and against Vavilov as garnishee).

Bureau For Representing Ukrainian Interests In International And Foreign Courts, 2013 WL 4051880, * 1-2 (1st Cir. August 12, 2013).

    In 1997, United Energy sued Universal Trading for libel in Massachusetts District Court (amended complaint, ¶ 15), and Universal Trading made a counterclaim for breach of contract and fraud in connection with the business relationship.   Amended complaint, ¶ 15-16; Universal Trading & Inv. Co., Inc. v. Dugsbery, Inc., 2011 WL 62162, * 1 (N.D. Cal. Jan. 7, 2011).   After the underlying libel suit was dismissed, United Energy stopped participating in the suit and Universal Trading obtained a default judgment against United Energy for $18 million. (Amended complaint, ¶ 17; Declaration of Kenneth F. McCallion In Support Of Defendant's Motion To Dismiss The Complaint, (Dkt. 22), Exhibit 4 attached (Dkt. 22-4) Affidavit of Dr. George Lambert In Support of Motion For Assessment Of Damages And For Entry Of Default Judgment).   This is the default judgment sought to be collected against Vavilov, a Russian national, residing in Russia.   (Andrey Vavilov Declaration, ¶ 4.; Amended complaint, ¶ 1).

    Universal Trading's report of "the appearance of malfeasance to Ukrainian authorities" led to a May 1998 contract between UPGO and Universal Trading to recover for the Ukrainian government assets allegedly transferred by United Energy, assets allegedly known to Universal Trading because of the relationship Universal Trading had with its former client United Energy.   (Amended complaint, ¶ 120).   The Universal Trading-UPGO contract allegedly involved powers of attorney and assignments of rights by UPGO to Universal Trading (as partial payment for commissions owed on sums recovered) such that Universal Trading filed lawsuits in the United States in an attempt to recover assets on behalf of the Ukraine government (unrelated to other suits filed by Universal Trading (like this one) to collect on the default judgment Universal Trading obtained as a result of its failed business relationship).

This contractual relationship between UPGO and Universal Trading (entered into by George Lambert, Universal Trading's president *and* lead counsel in *this* case) also resulted in a lawsuit between Universal Trading and UPGO, for breach of contract, seeking payment of commissions allegedly owed under the 1998 recovery contract and resulted in, among other things, determinations that the assignments by UPGO to Universal Trading of the rights to certain claims for property in United States allegedly transferred by United Energy to others, were invalid and unenforceable.   Universal Trading & Inv. Co., Inc. v. Kiritchenko, 2007 WL 2669841 (N.D. Cal. Sept. 7, 2007), aff'd, 346 Fed. Appx. 232, 232 (9th Cir. 2009)[4]; Universal Trading & Inv. Co., Inc. v. Kiritchenko, 2008 WL 2445073 (N.D.CA June 16, 2008); Universal Trading & Inv. Co., Inc. v. Bureau for Representing Ukrainian Interests in International and Foreign Courts, 898 F. Supp.2d 301, 319 (D. Mass. 2012) (collateral estoppel bars Universal Trading's claim on the UPGO's assignment which was held invalid in Universal Trading & Inv. Co., Inc. v. Kiritchenko).

The subtext is political and Universal Trading's motives for collection multifaceted.   Co-defendant, the former president of United Energy, is imprisoned Yulia Tymoshenko, the two-time former prime minister of Ukraine.   (Amended complaint, ¶ 2). The president of Universal Trading is George Lambert, plaintiff's counsel here.   Over the past 15 years, Mr. Lambert and Universal Trading have been busy filing actions:   (1) for breach of the 1994 recovery contract between Universal Trading and United Energy, resulting in the 2005

---

[4]  In affirming the district court's decision, the court stated: "The district court did not err in concluding the assignment was invalid under Ukrainian law.   The purported assignment of claims by Ukraine was a sham created only to overcome defendants' initial challenges to UTI[Co]'s standing.   Even were it not, UTI[Co] failed to prove the assignment was valid under Ukrainian law.   UTI[Co] failed to prove a deputy prosecutor general had the authority to assign the rights of the Ukrainian government against Kiritchenko and Lazarenko to UTI[Co]." Universal Trading & Inv. Co., Inc. v. Kiritchenko, 346 Fed. Appx.232, 232 (9th Cir. 2009).

default judgment; (2) for recovery of United Energy's assets in the United States and elsewhere, on behalf of UPGO, in connection with the 1998 recovery contract between Universal Trading and UPGO; (3) for breach of the 1998 recovery contract between Universal Trading and UPGO; and (4) for collection of the 2005 and 2011 default judgments obtained against United Energy and Bassington.   A list containing those and other suits is exhibit 5.   All of these suits have been unsuccessful and have resulted in dismissal and the assignments from UPGO declared unenforceable.   Yet, Universal Trading keeps forging ahead, with untenable, time-barred claims, this time against Vavilov.

  **B.**  **Procedural History**

    This action was originally commenced against Tymoshenko as part of Universal Trading's campaign to collect its 2005 default judgment against non-party United Energy.   This Court dismissed all claims against Tymoshenko on jurisdictional grounds.   In dismissing the case, this

> Court found that Universal Trading failed to allege that any agents of Yulia
> Tymoshenko ("Tymoshenko") took actions in New York on her behalf or that she
> conducted any business in New York herself.

Universal Trading & Inv. Co., Inc. v. Tymoshenko, 2013 WL 1500430, * 1 (S.D.N.Y. April 10, 2013); Universal Trading & Inv. Co., Inc. v. Tymoshenko, 2012 WL 6186471, * 2-3 (S.D.N.Y. Dec. 12, 2012), exhibits 3 and 4.

    This Court mostly denied Universal Trading's Rule 59(e) motion to amend the Order dismissing the complaint, but allowed a narrow amendment.

> Universal Trading's motion to amend its complaint, 'including possibly adding
> . . . New York agents as co-defendants, [which] may cure defects of asserting
> jurisdiction under [RICO]' is GRANTED.
>
> **Only amendments related to its RICO cause of action will be allowed,
> however, and its motion is DENIED in all other respects.**

Universal Trading & Inv. Co., Inc. v. Tymoshenko, 2013 WL 1500430, *2 (S.D.N.Y. April 10, 2013) (emphasis added), exhibit 4.

      **C.**      **The Amended Complaint**

      After this Court gave Universal Trading the opportunity to re-open its dismissed case by coming up with a New York agent upon which to create a basis to assert personal jurisdiction over defendant Tymoshenko, Universal Trading made allegations, "on information and belief," about Vavilov receiving in *1997* "a $10 million bribe from UESU's assets, directed by the Tymoshenkos through New York, with which he acquired an apartment in New York for about $5 million."   (Amended complaint, ¶ 5).   These allegations are conspicuously absent from the complaint, which fails to mention Vavilov or the alleged "bribe" that is one of the largest transactions alleged in this case and more than one-half the judgment sought to be collected.

      The unsupported (and inadequately pled) allegations surrounding this alleged 16–year-old "bribe" are, not something that likely would be "newly discovered" between the complaint and the amended complaint, especially given that Universal Trading and Mr. Lambert have devoted decades to investigating and litigating these very issues.   If the alleged $10 million bribe occurred, it is not something that Universal Trading would likely have omitted from its complaint or waited 16 years to act on.   It is significant that Universal Trading provides no details about the alleged bribe or describes how or when it learned of it.

      Desperate for a New York-connection to Tymoshenko, Universal Trading decided to use defendant Vavilov's putative connections to Tymoshenko in an effort to claim jurisdiction. Instead of an amended complaint with "only amendments related to its RICO cause of action" Universal Trading's amended complaint changes every aspect of its original 25-page, 146-

paragraph, 10-count complaint.   The amended complaint, now 58 pages, 297 paragraphs, and 6 counts, seeks collection of the United Energy judgment plus collection of a second judgment—the Bassington judgment—the addition of which was expressly prohibited by this Court[5], and adds Vavilov as a defendant NOT on the RICO count[6]  (the only count permitted to be amended), but instead on the *five other counts* comprising the amended complaint.   Universal Trading has asserted five claims against Vavilov:   turnover, unjust enrichment, constructive trust/equitable lien, fraudulent conveyance and civil conspiracy—and makes no claim under RICO against Vavilov.

    **D.   Universal Trading's Similar Unsuccessful Litigation**

Other courts have not been persuaded by Universal Trading's questionable tactics and looseness with the truth.   When Universal Trading sought to enforce this same 2005 United Energy default judgment against real property purchased by Lazarenko and Dugsbery, Inc., on the theory that it acquired the property with funds fraudulently transferred by judgment debtor United Energy, the court in Universal Trading & Inv. Co., Inc. v. Lazarenko, 352 Fed. Appx. 210 (9th Cir. 2009), in affirming the grant of summary judgment in favor of defendants on statute of limitations grounds, noted deceptive representations by Universal Trading.[7]

---

[5]   Universal Trading & Inv. Co., Inc. v. Tymoshenko, 2013 WL 1500430, *2 n.1 (S.D.N.Y. April 10, 2013) (Crotty, J.).

[6]   The RICO claim is asserted against only the Tymoshenko defendants, and not against Vavilov.   Universal claims only that Vavilov was "an agent for the racketeering enterprise." (Amended complaint, ¶5).   Vavilov addresses the RICO claim in this memorandum in support of the motion to dismiss solely for the purpose of demonstrating that any future request for leave to amend should be denied as futile.

[7]   Universal Trading continues to assert the collectability of $460,000 allegedly transferred to a Credit Suisse branch in 1997 (amended complaint, ¶ 74) that this Court *has already ruled* is not available to Universal Trading now either to collect or as a basis for jurisdiction.   Universal Trading & Inv. Co., Inc. v. Credit Suisse (Guernsey) Ltd., 2013 WL 1404805 (S.D.N.Y. April 5,

UTI distorts the summary judgment record as well as cited legal authority, and engages in baseless attacks on the district court's fairness.

More seriously, it appears to this court from official district court records that UTI's attorneys [one of whom is George Lambert] have repeatedly attempted to conceal and misrepresent the disposition of UTI's application to levy execution on bank accounts during the course of this appeal.   In UTI's initial brief, authored by George Lambert and John H. Aspelin, UTI argued the district court ignored the application to levy on bank accounts and never addressed the subject in any court order. . . .

* * *

Separate orders to show cause filed concurrently with this disposition require UTI's attorneys, George Lambert, John H. Aspelin, and James C. Bridgman, to show cause why they should not be disciplined pursuant to Fed. R. App. P. 46(b) and (c) for making material misrepresentations to this court.

Universal Trading & Inv. Company, Inc. v. Lazarenko, 352 Fed. Appx. 210, 212 (9th Cir. 2009).

In dismissing Universal Trading's complaint on a motion for judgment on the pleadings, the

court observed:

The Court has reviewed the 'new' authorities identified by UTICo, but finds that they do not stand for the propositions that UTICo claims they do.

* * *

. . . each new filing from UTICo seems to include new theories, even if the factual allegations upon which those theories rely appear nowhere in either UTICo's currently operative or proposed pleadings.   Those theories, although numerous, are so profoundly unpersuasive, . . .

United States v. All Assets Held at Julius Baer & Co., Ltd., 772 F. Supp.2d 191, 193, 199 (D. D. C. 2011).

---

2013) (Crotty, J.) and Universal Trading & Inv. Co., Inc. v. Credit Suisse (Guernsey) Ltd., 2012 WL 6186598 (S.D.N.Y. Dec. 12, 2012) (Crotty, J.).

### III.   ARGUMENT

   A.   **The Amended Complaint Fails To State Any Claim Against Vavilov Upon Which Relief May Be Granted**

   1.   **Legal Standard Governing This 12(b) Motion**

In considering a motion to dismiss, the court "accept[s] as true all of the factual allegations contained in the complaint, and construes the complaint in the light most favorable to the plaintiff." Universal Trading & Inv. Co., Inc. v. Credit Suisse (Guernsey) Ltd., 2012 WL 6186598 at * 4 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544 , 572 (2007)). "Nevertheless, simple chanting of the elements of a cause of action, 'supported by mere conclusory statements, do not suffice. . . .   While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.'"   Midwest Memorial Group, LLC v. Int'l Fund Services (Ireland) Ltd., 2011 WL 4916407, *3 (S.D.N.Y. October 17, 2011) (Crotty, J.) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1949–50 (2009)).

To "avoid dismissal, the complaint must contain 'enough facts to state a claim to relief that is plausible on its face,' that is to say, facts that 'nudge [ ] [the plaintiff's] claims across the line from conceivable to plausible. . . .'"   Midwest Memorial Group, LLC, 2011 WL 4916407 at * 3 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

> To state a facially plausible claim, a plaintiff must plead 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'   Ashcroft v. Iqbal, 556 U.S. 662, 677 (2009).   'A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'   Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'   Id. (quoting Twombly, 550 U.S. at 557).

Universal Trading & Inv. Co., Inc. v. Credit Suisse (Guernsey) Ltd., 2012 WL 6186598 at * 4.

Complaints alleging fraud must meet a heightened pleading standard, such that the plaintiff "must state with particularity the circumstances constituting the fraud."   Fed. R.

Civ. P. 9(b); <u>Universal Trading & Inv. Co., Inc. v. Credit Suisse (Guernsey) Ltd.</u>, 2012 WL 6186598 at * 4.

> "In general, allegations of fraud based on information and belief do not satisfy the requirements of Rule 9(b)" unless they regard "matters particularly within the knowledge of the opposing party," for which the allegations may be made on information and belief; but "must be accompanied by a statement of the facts on which the belief is founded." <u>Cargo Partner AG v. Albatrans Inc.</u>, 207 F. Supp.2d 86, 116 (S.D.N.Y. 2002), aff'd, 352 F.3d 41 (2d Cir. 2003).

<u>Universal Trading & Inv. Co., Inc. v. Credit Suisse (Guernsey) Ltd.</u>, 2012 WL 6186598 at * 4.

### 2.     This Court Lacks Personal Jurisdiction Over Andrey Vavilov

On a Rule 12(b) motion, "the plaintiff has the burden of establishing that the court has personal jurisdiction over the defendant."   <u>Tymoshenko v. Firtish</u>, 2013 WL 1234943, * 2 (S.D.N.Y. March 27, 2013) (citing <u>Metro. Life Ins. v. Robertson-Ceco Corp.</u>, 84 F.3d 560, 566 (2d Cir. 1996)). [8]

There is no basis for personal jurisdiction over Vavilov.   Falsely alleged to live in New York (amended complaint, ¶ 5), Vavilov is a citizen of Russia, residing in Russia, and has never resided in New York.   (Vavilov Declaration, ¶ 4,5, Golden declaration exhibit 1). Vavilov did not purchase apartments in New York in 1997 (amended complaint ¶ 5) and does not have a direct ownership interest in New York real estate, though he is the beneficiary of a trust that is the indirect owner of New York real estate and has use of the New York real estate. (Vavilov Declaration).

Since Vavilov is not a RICO defendant, state law governs the analysis and "[p]ersonal jurisdiction is governed by New York law, which provides for personal jurisdiction

---

[8]   Although service on Vavilov is questionable, in consideration of plaintiff's agreement to an extension to respond to the amended complaint, Vavilov agreed to not move to dismiss on grounds based on service, while plaintiff agreed that not challenging service is not an admission of jurisdiction.

over out-of-state defendants based on general jurisdiction under NYCPLR § 301 or long-arm

jurisdiction under NYCPLR § 302.   Universal Trading & Inv. Co., Inc. v. Tymoshenko, 2012

WL 6186471, *2 (S.D.N.Y. Dec. 12, 2012) (Crotty, J.) (citing D.H. Blair & Co. v. Gottiener, 462

F.3d 95, 104 (2d Cir. 2006)).   Universal Trading "carries the burden of demonstrating that

jurisdiction exists."   Universal Trading, 2012 WL 6186471 at *2 (quoting Penachio v. Benedict,

461 Fed. Appx. 4, 5 (2d Cir. 2012) (citing Robinson v. Overseas Military Sales Corp., 21 F.3d

502, 507 (2d Cir. 1994))).

        NYCPLR Section 301 (*general jurisdiction*) "grants jurisdiction over a foreign

party 'engaged in such a continuous and systematic course of 'doing business' [in New York] as

to warrant a finding of its 'presence' in this jurisdiction."   Universal Trading & Inv. Co., Inc. v.

Tymoshenko, 2012 WL 6186471 at *2 (quoting Laufer v. Ostrow, 434 N.E.2d 692, 649 (N.Y.

1982) (quoting McGowan v. Smith, 419 N.E.2d 321, 323 (N.Y. 1981)).   According to this

Court, this "requires a finding that they are 'present' in the state 'not occasionally or casually,

but with a fair measure of permanence and continuity.'"   Universal Trading, 2012 WL 6186471

at *2 (quoting Landoil Resources Corp. v. Alexander & Alexander Servs., 77 N.Y.S.2d 28, 34

(1990)).   Section 301 general jurisdiction requires that a defendant be a New York domicile.

Deer Consumer Products v. Little, 938 N.Y.S. 2d 767, 774-75, 35 Misc.3d 374, 381 (2012).

> "Domicile is established by physical presence in a place in connection with a
> certain state of mind concerning one's intent to remain there."   Thus, a person
> can have multiple residences but can have only one domicile.

Deer Consumer Products v. Little, 938 N.Y.S.2d at 774-75, 35 Misc.3d at 381, quoting

Mississippi Band of Choctaw Indians v. Holyfield, 490 U.S. 30, 48 (1989).

        NYCPLR § 302(a)(1) (*specific jurisdiction)* "provides that a court may exercise

personal jurisdiction over a nondomiciliary who 'transacts any business within [New York],

provided that the cause of action arises out of the transaction of business.'" Universal Trading & Inv. Co., Inc. v. Tymoshenko, 2012 WL 6186471 at *2 (quoting Deer Consumer Prods., Inc. v. Little, 938 N.Y.S.2d 767,776 (N.Y. Sup.Ct. 2012)(citing Lebel v. Tello, 707 N.Y.S.2d 426, 426 (1st Dep't 2000)).    To "satisfy Section 302(a)(1), 'there must be an 'articulable nexus or a substantial relationship between transactions occurring within the state and the cause of action sued upon.'"" Universal Trading, 2012 WL 6186471 at *2 (quoting Tamam v. Fransabank Sal, 677 F. Supp.2d 720, 726 (S.D.N.Y. 2010) (quoting Sunward Elecs., Inc. v. McDonald, 362 F.3d 17, 23 (2d Cir. 2004)).    "Jurisdiction will not extend to cover defendants with nothing more than petty contacts to the state." Universal Trading, 2012 WL 6186471 at *2 (quotation omitted).

Plaintiff has not alleged that Vavilov "shared the goal of concealing United Energy-Ukraine's assets," or how the alleged transfer of $10 million allegedly in 1997 "could have been intended to prevent collection of a judgment that had not yet occurred and could not have been foreseen at the time of the wire transfers, the claimed connection is too attenuated to find that the 'arising from' requirement has been satisfied with regard to" Vavilov. Universal Trading & Inv. Co., Inc. v. Credit Suisse (Guernsey) Ltd., 2012 WL 6186598, *4 (S.D.N.Y. Dec. 12, 2012)(Crotty, J.) (dismissing a case brought by Universal Trading on similar grounds against numerous Credit Suisse entities and employees).

Vavilov's alleged role is confined to one act which Universal Trading repeatedly describes throughout the amended complaint with purposeful vagueness and internal inconsistency, because Universal Trading has no factual support for this allegation.    According to the amended complaint, 16 years ago, sometime in 1997 (8 years before Universal Trading obtained the United Energy default judgment and 15 years before Universal Trading obtained the

Bassington default judgment), Tymoshenko allegedly directed a $10 million bribe to Vavilov, and then Vavilov allegedly used $5 million of that $10 million to purchase an apartment in New York at an unspecified location shorty after the alleged 1997 bribe.

This Court does not have personal jurisdiction over Vavilov under NYCPLR § 301 (*general jurisdiction*).   Vavilov does not engage in a continuous and systematic course of doing business in New York, and he is not alleged to do so.   Nor can this Court assert *specific jurisdiction* over Vavilov under NYCPLR § 302; there is no articulable nexus between an apartment allegedly purchased around 1997 and judgments obtained 8 and 15 years later.

**3**.   **Universal Trading Lacks Standing**

The 297-paragraph amended complaint contains more than 100 paragraphs of allegations that the Tymoshenkos stole more than $2 billion from Ukraine.   (E.g., amended complaint, ¶ 21.)   The amended complaint suggests that this case is actually about the recovery of the alleged $2 billion theft,[9] and that Universal Trading has the right to collect it.   Actually, Universal Trading's claim has nothing to do with the Tymoshenkos' alleged theft.

Universal Trading brought this case to collect an $18 million default judgment it has against United Energy, which Universal Trading obtained in 2005.   (Amended complaint, ¶ 18).   The "basis" for the default judgment is Universal Trading's claim for fees, lost profits and business torts from Universal Trading's work for United Energy's predecessor Cube in 1993-1994.

Universal Trading vaguely alleges money transfers that include a $10 million payment to Vavilov (amended complaint, ¶ 53, and et seq.) (denied by Vavilov) as part of the

---

[9]   This is a good time to remember Fed. R. Civ. P. 8's requirement of "a short a plain statement of the claim showing that the plaintiff is entitled to relief," the violation of which here, on an *amended complaint*, in the context of more than 10 years of litigation clogging the courts, is grounds for dismissal.

Tymoshenkos' alleged scheme with Pavlo Lazarenko (e.g., amended complaint, ¶ 65).   This is not the first time Universal Trading has claimed to have received the right from Ukraine to collect the stolen money from the Tymoshenkos, and as held before, Universal Trading does not have that right.   Universal Trading & Inv. Co., Inc. v. Kiritchenko, 2007 WL 2669841 (N.D. Cal. Sept. 7, 2007), aff'd, 346 Fed. Appx. 232, 232 (9th Cir. 2009); Universal Trading & Inv. Co., Inc. v. Bureau for Representing Ukrainian Interests in International and Foreign Courts, 898 F. Supp.2d 301, 319 (D. Mass. 2012).

The amended complaint seems to say that Universal Trading is suing on Ukraine's claim against the Tymoshenkos for stealing Ukraine money (why else describe that claim in more than 100 paragraphs?) and Universal Trading does not have standing, the right, to sue on Ukraine's claim against the Tymoshenkos.

### 4.      All Claims Are Barred By The Statute Of Limitations

All counts are time-barred.   Universal Trading brought this action 16 years after the causes of action accrued and the statute of limitation on the claims is 3 years.   Mass. Gen Laws ch. 260, § 2A.   Universal Trading & Inv. Co., Inc. v Credit Suisse, 2012 WL 6186598, *6 (S.D.N.Y. Dec. 12, 2012) (Crotty, J.).

The five counts against Vavilov (I, III, IV, V and VI) are all different names for a fraudulent conveyance and all are time-barred.   At the time *Universal Trading* became the judgment creditor in 2005, *United Energy* did not have live claims against any 1997 transferee. Universal Trading & Inv. Co., Inc. v. Dugsbery, Inc., 2011 WL 62162, *4 (N.D. Cal. Jan. 7, 2011).

Federal Courts sitting in diversity apply the forum state's statute of limitations.[10]

Universal Trading & Inv. Co., Inc. v Credit Suisse, 2012 WL 6186598 at * 6 (citing Hughes v. Equity Office Props. Trust, 245 Appx.88, 89 (2d Cir. 2007) (citation omitted)).

> Pursuant to N.Y. C.P.L.R § 202, New York applies the shorter of the limitations period of either New York or the state of accrual, which, for purely economic injuries, "is usually where the plaintiff resides and sustains the economic impact of the loss."

Universal Trading & Inv. Co., Inc. v. Credit Suisse, 2012 WL 6186598 at * 6 (citing Global Fin. Corp. v. Triarc Corp., 93 N.Y.2d 525, 530-31 (1999)).   As this Court held in a similar action Universal Trading brought against Credit Suisse to collect on the same judgments, "[b]ecause Plaintiffs are Massachusetts corporations, Massachusetts law governs and the statute of limitations . . . is three years."   Id. (citing Mass. Gen. Laws ch. 260 § 2A; see also Cambridge Literary Props., Ltd. v. W. Goebel Porzellanfabrik G.M.B.H. & Co. KG, 448 F. Supp.2d 244, 263 n. 16 (D. Mass. 2006)).

Vavilov's last alleged specified act--and only act--allegedly occurred in 1997. Universal Trading filed its complaint against Vavilov on June 4, 2013.   Where, as here, "it appears on the face of the complaint that the cause of action has not been brought within the statute of limitations" this Court should dismiss all the claims against Vavilov.   Universal Trading & Inv. Co., Inc. v Credit Suisse, 2012 WL 6186598 at * 6 (citation omitted).

### 5.    The Turnover Claim Fails

"Pursuant to Fed. R. Civ. P. 69(a)(1), the process of executing on a money judgment is governed by NYCPLR § 5225(b), under which 'a judgment creditor pursuing property in the possession of someone other than the judgment debtor must commence an action against the *person in possession*.'"   Universal Trading & Inv. Co., Inc. v Credit Suisse, 2012

---

[10]  There are no federal claims asserted against Vavilov.

WL 6186598, * 5 (emphasis in original) (quoting <u>Alliance Bond Fund, Inc. v. Grupo Mexicano</u>

<u>de Desarrollo, S.A.</u>, 190 F.3d 16, 21 (2d Cir. 1999)).   The amended complaint does not properly

allege that Vavilov is "in possession" of the assets on behalf of United Energy.   It is not alleged

that Vavilov currently holds funds or other property on behalf of United Energy from which its

debt to Universal Trading can be paid.

> Universal Trading alleges that:
>
> 5.   On information and belief, Vavilov received a $10 million bribe from UESU's assets, directed by the Tymoshenkos through New York, for which he acquired an apartment in New York for about $5 million.   While the $10 million bribe was illegal, the title to such assets did not transfer from UESU.   Vavilov is a garnishee of UESU's assets for $10 million, which may be used to partially satisfy the UESU judgment. . . .
>
> * * *
>
> 59.   On March 30, 1997, within weeks of the Gazprom settlement deal, the Tymoshenkos directed $10 million from the UEIL [United Energy-Ukraine's parent corporation] Account [sic] in London, through Aksoy, to account No. 608211194, at Republic National Bank in New York, maintained by Louis D'Or Investment bank ("Louis D'Or"), a Barbados entity.
>
> 60.   The nominal recipient of that transfer was Angora Management Ltd. ("Angora"), registered in the Bahamas.   Angora's beneficiary was, on information and belief, Vavilov.
>
> 61.   As investigation has shown, Louis D'Or was controlled by Vavilov's co-conspirator, Ashot Egiazaryan ("Egiazaryan"), who managed Unikombank in Russia.   Vavilov's friend, Nadezhda Kossareva, managed Louis D'Or, with a nominee office at Musson Bldg, 2nd Floor, Hincks St., Bridgetown, Barbados. Louis D'Or was owned by nominee Titan (Isle of Man) Ltd, which was controlled by Vavilov's agent, the vice chairman of Unikombank, Andrey Gloriozov ("Gloriozov"), who is currently at large wanted by Interpol.
>
> 62.   Shortly after that bribe was paid to Angora's sub-account at Republic National Bank in New York, on information and belief, Vavilov bought a $5 million apartment in New York.   As a government official, Vavilov was prohibited from obtaining any income other than his salary.   Title to the $10 million bribe did not transfer to Vavilov, the title still vests in UESU.

(Amended complaint, at ¶¶5, 59-61).

Universal Trading has not alleged that Vavilov possesses any assets of United Energy, or that he ever did.   It is alleged, instead, that $10 million was transferred by the Tymoshenkos and that these funds were that of United Energy's *parent* UEIL, not that of the judgment debtor, United Energy.   *It is not alleged that judgment debtor United Energy transferred money to Vavilov*.   It is alleged that "UESU's and Bassington's corporate veils should be pierced for purposes of satisfying the accumulated judgment debt as they were alter egos for the Tymoshenkos."   (Amended complaint, ¶ 218).

Universal Trading does not allege that any funds were transferred to Vavilov or received by Vavilov.   Instead, the amended complaint alleges the transfer of a $10 million "bribe" on March 30, 1997 was to Louis D'Or, and that the "nominal recipient of that transfer was Angora Management Ltd. ("Angora"), registered in the Bahamas" without explaining what a "nominal recipient" is, and whether and how Louis D'Or allegedly transferred the $10 million to Angora.   (Amended complaint ¶¶ 59-60-).   The amended complaint further alleges "on information and belief" that Angora's "beneficiary" was Vavilov.   (Amended complaint ¶ 60).   There is no allegation that Angora actually transferred the purported $10 million to Vavilov.   Further, there is no allegation that Vavilov owns, controls or is connected in any way to Louis D'Or or Angora.   In conclusory fashion, without any factual support, however, Universal Trading alleges,

> 219.   Furthermore, the corporate veil of Angora, a Bahamas company, the conduit of the $10 million bribe from UESU's proceeds directed to New York, should be pierced.   Vavilov declared Angora's alter ego for purposes of satisfying the judgment debt [sic].

(Amended complaint, ¶ 219).

Because Universal Trading admits that either Louis D'Or or Angora, but not Vavilov, was the recipient of the purported $10 million "bribe," and because Universal Trading

makes no attempt to plead facts that show Vavilov ever received the alleged bribe, and there are no facts to support piercing the alleged corporate veils, Universal Trading has failed to plead a turnover claim under CPLR 5225(b).   These vague statements do not meet the pleading standards set out in Iqbal and Fed. R. Civ. P. 9(b).

**6.      The Unjust Enrichment Claim Fails**

The amended complaint also does not state a claim for unjust enrichment, which requires a transaction between the plaintiff and defendant (none here) where the defendant has the plaintiff's money and the circumstances make that "unjust."

To state a claim for unjust enrichment, Universal Trading must allege a "connection" or "relationship between the parties that could have caused reliance or inducement."   Mandarin Trading Ltd. v. Wildenstein, 16 N.Y.3d 173, 919 N.Y.S.2d 465 (2011) (unjust enrichment claim failed because it "lack[ed] allegations that would indicate a relationship between the parties").

> Further, although privity is not required for an unjust enrichment claim, a claim will not be supported unless there is a connection or relationship between the parties that could have caused reliance or inducement on the plaintiff's part.

Georgia Malone & Co., Inc. v. Ralph Rieder, 86 A.D. 3d 406, 926 N.Y.S.2d 494 (2011) (internal citations omitted).   Here, there is no connection or relationship pled between Universal Trading and Vavilov, and the unjust enrichment claim necessarily fails.

19

## 7.    The Constructive Trust/Equitable Lien Claims Fail

In Count IV of the amended complaint, Universal Trading alleges, "[i]n addition, Vavilov's assets in New York should be adjudged, up to $10 million, originated from UESU, to be held in constructive trust for UESU, with equitable lien."   (Amended complaint ¶ 288).   In the wherefore clause, Universal Trading requests, "h) To allow post-judgment remedies, including the imposition of a constructive trust, an equitable lien, writs of attachment, injunctive relief, deposits into Court and appointing a receiver."

Any claim against Vavilov for imposition of a constructive trust or equitable lien fails.   Imposition of a constructive trust and equitable lien are "remedies for wrongs; and not wrongs themselves."   Abadin v. Marvel Entertainment, 2010 WL 1257519, *7 (S.D.N.Y. March 31, 2010) (Crotty, J.).   Since all claims are barred by the statute of limitations, there is no basis for the relief sought.

"Under New York law, the equitable remedy of a constructive trust is appropriate where there is clear and convincing evidence of (1) a confidential or fiduciary relationship; (2) an express or implied promise; (3) a transfer in reliance on such a promise; and (4) unjust enrichment."   Bice v. Robb, 2012 WL 762168, *7 (S.D.N.Y. March 9, 2012) (Crotty, J.) (quoting Martha Graham Sch. & Dance Found., Inc. v. Martha Graham Ctr. of Contemporary Dance, Inc., 380 F.3d 624, 646 (2d Cir.2004)).   "Notwithstanding these factors, '[t]he fourth element is the most important since the purpose of the constructive trust is prevention of unjust enrichment'."   Bice v. Robb, 2012 WL 762168 (S.D.N.Y. March 9, 2012) (Crotty, J.) (quoting In re First Cent. Fin. Corp., 377 F.3d 209, 212 (2d Cir.2004) (internal quotation omitted)). None of the elements exist or are alleged here.   Universal Trading has not alleged that a

confidential or fiduciary relationship between it and Vavilov existed, or that Vavilov made

Universal Trading any promise, or any unjust enrichment to Vavilov.

      The "proponent of an equitable lien on property must establish the existence of 'a

clear intent between the parties that such property be held, given or transferred as security for an

obligation.'"   Pallian v. Metlife Bank, Nat. Ass'n, 2013 WL 3190327, *5 (E.D.N.Y. June 20,

2013) (quoting U.S. Bank N.A. v. Lieberman, 98 A.D.3d 422, 950 N.Y.S.2d 127 (1st Dept

2012)).

      New York law allows the imposition of an equitable lien if there is an express or

implied agreement "that there shall be a lien on specific property" (Teichman v. Community

Hosp. of W. Suffolk, 87 N.Y.2d 514, 520, 640 N.Y.S.2d 472, 663 N.E.2d 628 [1996] [internal

quotation marks and citation omitted] ). . . . A party's "mere expectation, however sincere, is

insufficient to establish an equitable lien" (Scivoletti v. Marsala, 61 N.Y.2d 806, 809, 473

N.Y.S.2d 949, 462 N.E.2d 126 [1984]).   M & B Joint Venture, Inc. v. Laurus Master Fund,

Ltd., 12 N.Y.3d 798, 800, 907 N.E.2d 690, 692 (2009).   Universal Trading's allegations are

conclusive proof that it is not entitled to an equitable lien on Vavilov's property.

### 8.    The Fraudulent Conveyance Claim Fails

      Count V of the amended complaint is entitled "Fraudulent Conveyance" but the

amended complaint does not allege that any money of United Energy was ever transferred to

Vavilov.   The amended complaint alleges that Tymoshenko transferred money belonging to

UEIL to an account of Louis D'Or which then transferred the money to Angora.   Shortly after

that occurred (in 1997) Vavilov is alleged to have purchased an apartment for one-half of the

alleged $10 million "bribe."   (Amended complaint, ¶¶ 59-62, 291).

McKinney's Debtor and Creditor Law § 276 provides that "[e]very conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay or defraud either present or future creditors, is fraudulent as to both present and future creditors." Watson v. Riptide Worldwide, Inc., 2013 WL 417372, *8 (S.D.N.Y. Feb. 4, 2013) (Crotty, J).   "'To prove actual fraud under § 276, a creditor must show intent to defraud on the part of the transferor'." Id. (quoting In re Sharp Int'l Corp., 403 F.3d 43, 56 (2d Cir.2005) (quoting HBE Leasing Corp. v. Frank, 61 F.3d 1054, 1059 n. 5 (2d Cir.1995))).

A "plaintiff must also plead allegations of intent to defraud with particularity, as required by Rule 9(b)." Watson v. Riptide Worldwide, Inc., 2013 WL 417372, *8.   Given the difficulty of proving actual intent, a plaintiff may allege actual intent through circumstantial evidence, or "badges of fraud." Id., citing Camofi Master, 2011 WL 1197659, at *6.   These "badges of fraud" include:

> (1) a close relationship between the parties to the conveyance; (2) inadequacy of consideration received; (3) retention of control of the property by the transferor; (4) suspicious timing of the conveyance after the debt was incurred; (5) the use of fictitious parties; and (6) information that the transferor was insolvent as a result of the conveyance.

Watson v. Riptide Worldwide, Inc., 2013 WL 417372 (S.D.N.Y. Feb. 4, 2013) (Crotty, J) (internal citations omitted).

> In addition to alleging facts that give rise to a "strong inference of fraudulent intent," to satisfy Rule 9(b), a complaint "must specify the 'particulars' of the alleged fraud—including, for example, the time, place, particular individuals involved, and specific conduct at issue."   However, "allegations may be based on information and belief when facts are peculiarly within the opposing party's knowledge."

Watson v. Riptide Worldwide, Inc., 2013 WL 417372, *8 (citations and quotations omitted).

Universal Trading fails to plead any of these required elements.

### 9.    The Civil Conspiracy Claim Fails

Count six purports to allege a claim for civil conspiracy.   "New York does not recognize an independent tort of civil conspiracy."   Midwest Memorial Group, LLC v. International Fund Services (Ireland) Ltd., 2011 WL 4916407 (S.D.N.Y. October 17, 2011) (Crotty, J.) (citing Kirch v. Liberty Media Corp., 449 F.3d 388, 401 (2d Cir. 2006); Alexander & Alexander of New York, Inc. v. Fritzen, 68 N.Y.2d 968, 510 N.Y.S.2d 546 (N.Y. 1986)) (stating, "[a]llegations of conspiracy are permitted only to connect the actions of separate defendants with an otherwise actionable tort.")).   To state a claim for civil conspiracy under New York law, a plaintiff, *in addition to alleging an underlying tort*, must plead facts sufficient to support an inference of the following elements:   "(1) an agreement between two or more parties; (2) an overt act in furtherance of the agreement; (3) the parties' intentional participation in the furtherance of a plan or purpose; and (4) resulting damage or injury."   Abacus Fed. Sav. Bank v. Lim, 75 A.D.3d 472, 474, 905 N.Y.S.2d 585, 588 (2010).   Universal Trading fails to state causes of action for any tort underlying the alleged conspiracy; it necessarily fails to state an actionable claim for civil conspiracy.

### B.    Violation of Fed. R. Civ. 15(a)(2) Warrants Dismissal

The amended complaint should also be dismissed because Universal Trading in amending its complaint, has acted outside the scope of the permission given to it by this Court in violation of Rule 15(a)(2).   In its April 10, 2013, Opinion reopening this matter after dismissing it for lack of personal jurisdiction, this Court held:

> Accordingly, Universal Trading's motion to amend its complaint, "including possibly adding . . . New York agents as co-defendants, [which] may cure any defects of asserting jurisdiction under [RICO]" is GRANTED.   (Pl.'s br. at 11.) **Only amendments related to its RICO cause of action will be allowed, however, and [Universal Trading's] motion is DENIED in all other respects**.

Universal Trading & Investment Co., Inc. v. Tymoshenko, 2013 WL 1500430, *2 (S.D.N.Y.

April 10, 2013) (emphasis added) (brackets in original).   Instead of filing an amended

complaint with "only amendments related to its RICO cause of action," Universal Trading filed a

complaint that amends every aspect of its original 25-page, 146-paragraph, 10-count complaint.

The amended complaint adds Vavilov as a defendant NOT on the RICO count (the only count

permitted to be amended), but instead on the *five other counts*.

Universal Trading disregarded the express directive of this Court's April 10,

2013, Order, by filing an amended complaint well beyond any authorized amendments to "its

RICO cause of action."   Universal Trading & Investment Co., Inc. v. Tymoshenko, 2013 WL

1500430, *1, n. 1 (S.D.N.Y. April 10, 2013).

### C.   Universal Trading's RICO Claims, If Asserted Against Vavilov, Would Fail

Vavilov is not named as a defendant on the RICO claim.   The amended

complaint pleads:   "Vavilov is a Defendant herein because he was an agent for the *racketeering

enterprise*."   (Amended complaint, ¶ 5).   The only alleged conduct (whether it be as an agent

or otherwise) that Vavilov is alleged to have engaged in dates back to 1996-1997.   (Amended

complaint, ¶ 5).[11]

The Second Circuit "evaluate[s] the RICO allegations with respect to each

defendant *individually*."   First Capital Asset Mgmt v. Satinwood, Inc., 385 F.3d 159, 180 (2d

Cir. 2004) (emphasis added).   "The focus of Section 1962(c) is on individual patterns of

racketeering activity engaged in by a defendant rather than on the collective activities of the

---

[11]   The amended complaint does not even purport to "cure defects of asserting jurisdiction under [RICO]" because nowhere does the amended complaint make the necessary allegation, which would be untrue, that Vavilov was the Tymoshenkos' agent, and in New York, "on the day the complaint" was filed.   Pincione v. D'Alfonso, 2011 WL 4089885. *5 (S.D.N.Y) (Crotty, J.).

members of the enterprise." Jerome M. Sobel & Co. v. Fleck, 2003 WL 22839799 at *6 (S.D.N.Y. Dec. 1, 2003).

To "state a RICO claim, a plaintiff must plead, (1) conduct, (2) of an enterprise, (3) through a pattern, (4) of racketeering activity." Antian v. Coutts Bank (Switzerland), Ltd., 193 F.3d 85,88 (2d Cir. 1999). A pattern requires *two or more* racketeering acts, but the existence of any two acts is not alone sufficient; a pattern requires both "relatedness" and "continuity". H.J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 243. Universal Trading cannot plead any of these elements these against Vavilov.

The Second Circuit has held that RICO does not apply extraterritorially. Norex Petroleum Ltd. v. Access Indus., Inc., 631 F.3d 29, 32-33 (2d Cir. 2010) (per curium). The "Second Circuit emphasized that "simply alleging that *some* domestic conduct occurred cannot support a claim of domestic application." Norex, 631 F.3d at 33. "Accordingly, peripheral contacts with the United States—up to and including use of domestic bank accounts—do not bring an otherwise foreign scheme within the reach of the RICO statutes." Republic of Iraq v. ABB AG, 2013 WL 441959, at *21 (S.D.N.Y. Feb. 6, 2013) (Stein, J.) (dismissing for failure to state a claim where it was "implausible to accept that the thrust of the pattern of racketeering activity" was directed at the United States).

## IV.    CONCLUSION

Counts I, III, IV, V, and VI against Andrey Vavilov should be dismissed, with prejudice. Any request for leave to amend again to add Vavilov as a defendant should be denied as futile.

EXHIBITS

1.      Declaration of Andrey Vavilov.

2.      Amended Complaint.

3.      <u>Universal Trading & Investment Co., Inc. v. Tymoshenko</u>, 2012 WL 6186471 (Dec. 12, 2012) (Crotty, J.) (dismissing complaint)

4.      <u>Universal Trading & Investment Co., Inc. v. Tymoshenko</u>, 2013 WL 6186471 (April 10, 2013) (Crotty, J.) (granting leave to amend complaint; "Only amendments related to the RICO cause of action will be allowed.")

5.      Westlaw search result showing 50 reported opinions involving Universal Trading litigation in the United States