UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNIVERSAL TRADING & INVESTMENT CO., INC.  :<br>:<br>V.   :<br>:<br>YULIA TYMOSHENKO  :<br>ALEXANDER TYMOSHENKO  :<br>ANDREY VAVILOV  :<br>:<br>and DOES from 1 to 10  :<br>: | CIVIL ACTION<br>NO. 11-CV-7877 (PAC) |

**ANDREY VAVILOV'S REPLY MEMORANDUM OF LAW IN SUPPORT OF
HIS MOTION TO DISMISS THE AMENDED COMPLAINT
PURSUANT TO FEDERAL RULE 12(b)**

Respectfully submitted,

/s/ Matthew P. Feser
MATTHEW P. FESER
SALISBURY & RYAN
1325 Avenue of the Americas
7th Fl.
New York, NY    10019
212-977-4660
212-977-4668 (fax)
mf@salisburyryan.com

Attorneys for defendant
Andrey Vavilov

Date:    November 27, 2013

/s/ James P. Golden
JAMES P. GOLDEN
Pennsylvania I.D. No. 32169
HAMBURG & GOLDEN, P.C.
1601 Market Street, Suite 3310
Philadelphia, PA    19103
215-255-8590
215-255-8583 (fax)
goldenjp@hamburg-golden.com
(Admitted Pro hac vice)

Attorneys for defendant
Andrey Vavilov

**TABLE OF CONTENTS**

|   |   |   | Page |
|---|---|---|---|
| I. | INTRODUCTION | | 1 |
| II. | ARGUMENT | | 2 |
| | A. | Universal Trading Essentially Addresses Only Vavilov's Jurisdiction Argument | 2 |
| | B. | All Of Universal Trading's Claims Are Barred By The Statute of Limitations | 2 |
| | C. | Universal Trading Improperly Attempts To Supplement The Record | 3 |
| | D. | Universal Trading's Assertions Are Unreliable | 6 |
| | E. | The Amended Complaint Violates Judge Crotty's Rule 59(e) Ruling | 8 |
| | F. | Universal Trading Did Not Adequately Plead That Vavilov Received A Bribe Or Is Part Of A RICO Conspiracy | 9 |
| | G. | This Court Does Not Have General Or Specific Jurisdiction over Vavilov | 9 |
| | H. | Service Does Not Confer Jurisdiction | 10 |
| III. | CONCLUSION | | 10 |

## TABLE OF CITATIONS

**Cases**                                                                                                                                Page

ATSI Commc'ns, Inc. v. Shaar Fund Ltd., 493 F.3d 87 (2d Cir. 2007) ..................... 4

Ericson v. Pardus, 551 U.S. 89 (2007)......................................................................... 4

Friedl v. City of New York, 210 F.3d 79 (2d Cir. 2000) ............................................. 4

Gilmartin v. Marsh & McLennan Cos., Inc., No 10 Civ. 8158, 2012 WL 2196114 (S.D.N.Y. June 15 2012).............................................................................. 4

Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc., 146 F.3d 66 (2d Cir. 1998) ................................................................................................ 5

Roth v. Jennings, 489 F.3d 499 (2d Cir. 2007).......................................................... 4

Simone v. U.S., No. 09 Civ. 3904, 2012 WL 4891617 (E.D.N.Y. Oct. 9, 2012) ........................................................................................................................... 4

Universal Trading & Inv. Co., Inc. v Credit Suisse, 2012 WL 6186598 (S.D.N.Y. Dec. 12, 2012) ........................................................................................... 2-3

Universal Trading & Inv. Co., Inc. v. Tymoshenko, 2013 WL 1500430 (S.D.N.Y. April 10, 2013) ........................................................................................... 8

**Statutes and Rules**

Mass. Gen Laws ch. 260, § 2A. .................................................................................. 2

I.   **INTRODUCTION**

This reply brief will not address every assertion made by Universal Trading & Investment Co., Inc. ("Universal Trading" or "UTICo"), because that would be impracticable. The absence of a reply on any single point does not mean that Vavilov acquiesces.

Universal Trading opposes Vavilov's motion to dismiss the amended complaint with unsupported extensions of already fully-stretched arguments; new factual assertions and allegations raised for the first time in opposition papers; affidavits and exhibits the propriety, accuracy and authentication of which must be rejected; and unreliable extraneous information that this Court cannot consider on a motion to dismiss a complaint.   Universal Trading's brief reads like a repetitive stress injury; the incomprehensible assertions conceal and mislead, again and again.

Some of Universal Trading's arguments in opposition to Vavilov's motion are derived from random internet articles from unreliable sources, appearing as declaration exhibits partially translated in broken English (sentences preceded and followed by ". . ."). The documents often do not even support the propositions for which Universal Trading claims they stand.   Conspicuously *absent* from Universal Trading's opposition to Vavilov's motion is reliance on a well-pleaded complaint.

In any event, 60 of the 105 exhibits submitted in opposition to Vavilov's motion have already been precluded from consideration by this Court and the remaining 45 will fair no better now.   As for the jurisdictional analysis, Universal Trading's *pronouncement* that Vavilov lives in New York, works in New York, or bought an apartment in New York in 1997, just cannot make it so.   Supplementing the jurisdictional record with media articles, apartment and decorator dispute pleadings surrounding events that took place twelve years after any alleged

wrongdoing on the part of Vavilov and that are *unrelated* to this lawsuit cannot make for either general or specific jurisdiction over Vavilov.

Regardless of jurisdiction, left to the four corners of the amended complaint, there is no way around the statute of limitations bar to every claim against Vavilov. The Court's analysis at this juncture should lead directly back to where it was on December 12, 2012, with dismissal of Universal Trading's complaint, now amended, and closure of this time-barred mess.

## II. ARGUMENT

### A. Universal Trading Essentially Addresses Only Vavilov's Jurisdiction Argument

Most of Universal Trading's brief addresses jurisdiction. Universal Trading barely attempts to respond to Vavilov's arguments that Universal Trading lacks standing, has not satisfied the substantive requirements for claims for turnover, unjust enrichment, constructive trust, fraudulent conveyance, civil conspiracy or its non-compliance with the Court's order permitting a limited amendment of the complaint. For example, on page 22, Universal Trading asserts that it properly pleaded a claim for unjust enrichment because in paragraph 282 of the amended complaint it used the phrase "unjust enrichment" and on page 23 Universal Trading notes that it used the phrase "constructive trust" in paragraph 288.

### B. All Of Universal Trading's Claims Are Barred By The Statute of Limitations

*In opposition to Vavilov's motion, Universal Trading failed to make any argument recognized by law for the extension or tolling of the statute of limitations.* See Universal Trading's brief section 13, pp. 17-19. All counts are time-barred. Universal Trading brought this action 16 years after the claims accrued and the statute of limitations is 3 years. Mass. Gen Laws ch. 260, § 2A. Universal Trading & Inv. Co., Inc. v Credit Suisse, 2012 WL 6186598, *6 (S.D.N.Y. Dec. 12, 2012) (Crotty, J.).

Vavilov's last alleged specified act--and only act--allegedly occurred in 1997. Universal Trading filed its complaint against Vavilov on June 4, 2013.   Where, as here, "it appears on the face of the complaint that the cause of action has not been brought within the statute of limitations" this Court should dismiss all the claims against Vavilov.   Universal Trading & Inv. Co., Inc. v Credit Suisse, 2012 WL 6186598 at * 6 (citation omitted).

### C. Universal Trading Improperly Attempts To Supplement The Record

Universal Trading relies upon W. Scott Thompson's Declaration, with its accompanying 60 exhibits (Dkt 65), and Roman Plyamovaty's Declaration, with its accompanying 45 exhibits (Dkt 64).   *The submission of the Thompson Declaration was already rejected by this Court* and its surreptitious resubmission is sanctionable.

On October 26, 2012, and again on November 15, 2013, Universal Trading submitted to this Court, the same 60 exhibits with virtually the same Thompson Declaration, first in opposition to Ms. Tymoshenko's motion to dismiss the original complaint and then, after this Court rejected this submission, Universal Trading submitted it again, in opposition to Vavilov's motion.   *Compare* Dkt. 25, Thompson October 26, 2012, Declaration ¶1-¶49, exhibits 1-49 *with* Dkt. 65, Thompson November 15, 2013, Declaration, ¶1-¶49, exhibits 1-49.   *Compare* Dkt. 65, Thompson November 15, 2013, Declaration, ¶50-¶57, exhibits 50–60 *with* Dkt. 24, Request to Take Judicial Notice of exhibits A-M and Dkt. 26, Thompson October 26, 2012, Declaration at ¶59.

Universal's submission is an attempt to relitigate matters upon which this Court has already ruled against Universal Trading.   Universal Trading & Inv. Co., Inc. v. Tymoshenko, 2012 WL 6186471, *1 (S.D.N.Y. Dec. 12, 2012) (Crotty, J.)   This Court has made clear that Thompson's Declaration and all 60 accompanying exhibits are not appropriate

3

submissions and may not be considered by this Court. For the same reasons the declaration and accompanying 45 exhibits of Roman Plyamovaty fall outside the scope of what this Court may consider here.

The items this Court may consider are on a motion to dismiss the complaint are settled and circumscribed. This Court, in this case, has already explained to Universal Trading:

> In considering a motion to dismiss, a court must accept all factual allegations in the complaint as true and draw reasonable inferences in favor of the plaintiff. *Ericson v. Pardus*, 551 U.S. 89, 93-94 (2007). Further, courts are "normally required to look only at the allegations on the face of the complaint," *Roth v. Jennings*, 489 F.3d 499, 510 (2d Cir. 2007), though they may also consider "documents attached to the complaint or incorporated into it by reference, any documents that are integral to the Plaintiff's allegations even if not explicitly incorporated by reference, and facts of which the Court may take judicial notice." *Gilmartin v. Marsh & McLennan Cos., Inc.*, No 10 Civ. 8158, 2012 WL 2196114, at * 5 (S.D.N.Y. June 15 2012)(citing *ATSI Commc'ns, Inc. v. Shaar Fund Ltd.*, 493 F.3d 87, 89 (2d Cir. 2007)).

<u>Universal Trading & Inv. Co., Inc. v. Tymoshenko</u>, 2012 WL 6186471, *1 (S.D.N.Y. Dec. 12, 2012) (Crotty, J.).

When Universal Trading submitted these 60 exhibits before, in exactly the same context (in opposition to a motion dismiss its complaint), this Court admonished:

> Plaintiff's opposition to the motion to dismiss is replete with factual assertions that do not fit into any of these categories. The Court declines to take these assertions into account because "[n]ew facts and allegations, first raised in a Plaintiff's opposition papers, may not be considered" in deciding a motion to dismiss. *Simone v. U.S.,* No. 09 Civ. 3904, 2012 WL 4891617, at *6 (E.D.N.Y. Oct. 9, 2012) (citations omitted). Similarly, the Court would err if it "consider[ed the] affidavits and exhibits submitted . . . in ruling on [the] motion to dismiss," as that would constitute "improper[ ] reli[ance] on matters outside the pleadings." *Friedl v. City of New York*, 210 F.3d 79, 83-84 (2d Cir. 2000) (internal quotations omitted)
>
> Universal Trading has also requested that the Court take judicial notice of voluminous filings, all of which are opposed by Tymoshenko. *See* Dkt. Nos. 24, 27. Courts may only take judicial notice [of] facts that are "generally known within the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot be reasonably questioned."

4

>Fed.R.Evid. 201(b), and must be cautious in doing so "because the effect … is to deprive a party of the opportunity to use rebuttal evidence, cross-examination, and argument to attack contrary evidence."  *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.,* 146 F.3d 66, 70 (2d Cir. 1998).

<u>Universal Trading & Inv. Co., Inc. v. Tymoshenko</u>, 2012 WL 6186471, *1 (S.D.N.Y. Dec. 12, 2012) (Crotty, J.)   What Universal seeks to slip into the record now as exhibits 50-60 of the Thompson November 15, 2013, Declaration, it requested in October 2012 that this Court to take judicial notice.   This Court refused, holding:

>Universal Trading requests that the Court take judicial notice of statements made in several filings in other litigation.   While "'[a] court may take judicial notice of a document filed in another court … to establish the fact of such litigation and related filings,'" it may not take judicial notice "'for the truth of the matters asserted in the other litigation.'" *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006) (quoting *Int'l Star Class Yacht Racing*, 146 F.3d at 70).   The Court therefore declines to take notice judicial notice of factual assertions in Requests for Judicial Notice A [now, Thompson 50], B [now, Thompson 51], C [now, Thompson 52], E [now, Thompson 54], F [now, Thompson 55], G [now, Thompson 56], I [now, Thompson 57], J [now, Thompson 58], L [now, Thompson 60], and M.   It is unnecessary for the court to determine the propriety of Requests for Judicial Notice D [now, Thompson 53], H, and K [now, Thompson 59], which are neither cited nor relied upon in Universal Trading's papers.

<u>Universal Trading & Inv. Co., Inc. v. Tymoshenko</u>, 2012 WL 6186471, *1 (S.D.N.Y. Dec. 12, 2012) (Crotty, J.)   This Court declined to take judicial notice of Thompson exhibits 50-60 before and must again decline.   For all the same reasons, the Plyamovaty Declaration and its 45 exhibits must not be considered by this Court.   All of the information and exhibits would constitute "improper reliance on matters outside the pleadings."   <u>Freidl v. City of New York</u>, 210 F.3d 79, 83-84 (2d Cir. 2000).

D. **Universal Trading's Assertions Are Unreliable**

Universal Trading's assertions are not credible and should be disregarded. While too numerous to refute every one, some of the more egregious examples include the following:

1. On page 2 of Universal Trading's brief, it writes,

   According to the allegations by bankers, the Russian mafia laundered about $1 billion through Louis D'Or holding accounts in New York, used by a Russian bank Unikombank, **connected to Vavilov. See RP Exh. 23.**

Emphasis added. Plyamovaty Declaration exhibit 23 says no such thing and does not mention Vavilov.

2. On page 2 of Universal Trading's brief, it writes,

   As relevant here, Vavilov, according to widely published allegations, used that transfer of $10 million to acquire, for about $5 million, the real estate in New York. See RP Exh. 3.

Plyamovaty Declaration exhibit 3 is a partial translation prepared for Universal Trading on October 10, 2013, of what Plyamovaty describes as "the article published by a media source "Who threatens Kuchma?" the originally published by Mosovsky Komsomolets newspaper in Moscow, March 21, 2001 . . ." [sic] Plyamovaty Declaration at ¶8. This unauthenticated, obviously unreliable, article is also the only source for the information Universal Trading seems to have about this so-called purchase of an apartment by Vavilov in 1997. Brief, p. 2. The article does not actually state that Vavilov took a bribe or purchased an apartment in New York.

The amended complaint mimics this article's vagueness regarding Vavilov and the putative 1997 apartment (¶ 62) *that Vavilov denies purchasing in his declaration supporting his motion*. The article states, "[s]hortly after the Barbados transfer, two apartments were

purchased, in New York on Kennedy Avenue . . ." Plyamovaty Declaration, Exhibit 3.   To stretch this further, Roman Plyamovaty declares:

> My office's review of the property in New York shows that here is a Kennedy Ave, Rockville Centre, NY 11570, in proximity of New York City.   There is also Corporal Kennedy Street, Bayside, NY 11361 (Queens).   There is also several other Kennedy Avenues and Streets in the State of New York.   The precise address of the property can be identified, if jurisdictional discovery were allowed, at Vavilov's deposition, where he stayed during his trips to New York, investigating the chain of title.

Plyamovaty Declaration, ¶12.   *Jurisdictional discovery is not necessary to confirm Vavilov's sworn statement, uncontroverted with anything real, such as real estate records*.

      **3**.      On page 18 of Universal Trading's brief, it writes:

> Then Vavilov alleges as though:   "There is no allegation that Angora actually transferred the purported $10 million to Vavilov." MTD, p. 18.   However, Angora has been, as alleged, Vavilov's own nominee entity, his alter ego, there was no purpose or need to transfer the $10 million from Angora, again, to himself; Angora was, figuratively, himself.   See RP Exhs 1-3.

Plyamovaty Declaration exhibits 1-3, cited exclusively for this Angora-Vavilov alter ego theory, do not state that Angora is Vavilov's alter ego.

      Universal Trading does not allege in the amended complaint that any funds were transferred to Vavilov.   Instead, the amended complaint alleges that the transfer of a $10 million "bribe" on March 30, 1997, was to Louis D'Or, and that the "nominal recipient of that transfer was Angora Management Ltd. ("Angora"), registered in the Bahamas" without explaining what a "nominal recipient" is, and whether and how Louis D'Or allegedly transferred the $10 million to Angora.   (Amended complaint ¶¶ 59-60.)   The amended complaint further alleges "on information and belief" that Angora's "beneficiary" was Vavilov.   (Amended complaint ¶ 60).   There is no allegation that Angora actually transferred the purported $10 million to Vavilov or that Angora actually was Vavilov's alter ego.   Further, there is no

7

allegation that Vavilov owns, controls or is connected in any way to Louis D'Or or Angora. In conclusory fashion, however, Universal Trading alleges in the amended complaint,

> 219. Furthermore, the corporate veil of Angora, a Bahamas company, the conduit of the $10 million bribe from UESU's proceeds directed to New York, should be pierced. Vavilov declared Angora's alter ego for purposes of satisfying the judgment debt [sic].

Amended complaint, ¶219.

Universal Trading admits that either Louis D'Or or Angora, but not Vavilov, was the recipient of the purported $10 million "bribe," and Universal Trading makes no attempt to plead facts that show Vavilov ever received the alleged bribe.

### E. The Amended Complaint Violates Judge Crotty's Rule 59(e) Ruling

After dismissing all claims against Tymoshenko on jurisdictional grounds, this Court, on Universal Trading's Rule 59(e) motion, permitted Universal Trading to file an amended complaint:

> **Only amendments related to its RICO cause of action will be allowed, however, and its motion is DENIED in all other respects.**

Universal Trading & Inv. Co., Inc. v. Tymoshenko, 2013 WL 1500430, *2 (S.D.N.Y. April 10, 2013) (emphasis added).

Universal Trading disregarded this Court's directive and amended every aspect of its complaint. Universal Trading denies the violation and instead declares that it complied with the Court's Order and that "amending the RICO claims, by necessity, required substantial amplification of the allegations and updating on newly discovered facts and on new developments." Universal Trading's brief, p. 24, and n. 11. There are no new developments because what Universal Trading calls "Vavilov's $450 million scheme" by Universal Trading's purported authority, has nothing to do with Vavilov.

### F. Universal Trading Did Not Adequately Plead That Vavilov Received A Bribe Or Is Part Of A RICO Conspiracy

Vavilov's opening brief demonstrates how the amended complaint does not adequately plead that Vavilov received a bribe (e.g., pp. 1 and 7) and that he is not part of the RICO claim (count 2) (e.g., pp. 24-25). To overcome that, Universal Trading attempts to morph criminal charges against Tymoshenko and Lazarenko into claims against Vavilov by adding unexplained and unsupported phrases such as "[t]hat was Vavilov's scheme." On page 3 of Universal Trading's brief, it writes:

> Vavilov got involved, as a co-defendant, in this case after the Ukrainian law enforcement recently brought charges against Tymoshenko (who is imprisoned) and against others, based on the fraudulent scheme for $450 million. WST Exhs 58-59. **That was Vavilov's scheme**, as a result UESU and its privies illegally obtained that amount in fraudulent debt settlements.

Emphasis added. Exhibits 58 and 59 have been rejected by this Court in this case, and regardless, those exhibits say nothing about Vavilov. Universal Trading introduces the "conspiracy" and reaches for Vavilov:

> The claim against Vavilov, as the garnishee holding the assets of judgment debtor United Energy Systems of Ukraine ("UESU") and as agent of the other two Defendants in the racketeering conspiracy, is relatively simple.

Brief, p. 1. Then Universal Trading "links" Pavel[1] Lazarenko and Tymoshenko, and "places" Vavilov into the conspiracy. Brief at 1-4, e.g., amended complaint ¶¶ 53-54. Lazarenko is not part of this case and Universal Trading has not even invented Vavilov's involvement with the alleged Lazarenko-Tymoshenko conspiracy with proper pleading in the amended complaint.

### G. This Court Does Not Have General Or Specific Jurisdiction over Vavilov

Universal Trading asserts that there is jurisdiction over Vavilov because of the existence of IFS Hedge Fund. Brief, p. 2. IFS Hedge Fund is a non-United States entity that

---

[1] Sometimes Pavel is written as Pavlo.

9

never did business in the United States, and though Vavilov was an investor in the fund, he had no controlling or executive role.   Andrew Ryan Declaration submitted with this brief.   A Delaware company named FinEx Americas was intended to be a consultant to IFS Hedge Fund, but the existence of FinEx Americas does not provide a basis for jurisdiction, because there was no "continuous and systematic course of doing business" in New York.   Universal Trading & Inv. Co., Inc. v. Tymoshenko, 2012 WL 6186471 at *2 (citations omitted).   Mr. Vavilov was one of the four Russian founders and owners of FinEx Plus LLC, which was the Russian parent company of FinEx Americas.   Mr. Vavilov never had any controlling or executive role in FinEx Americas or in FinEx Plus LLC.   Ryan Declaration.

  **H.** **Service Does Not Confer Jurisdiction**

  Although service on Vavilov was questionable, in consideration of Universal Trading's agreement to an extension to respond to the amended complaint, Vavilov agreed not to move to dismiss on grounds based on bad service, while Universal Trading agreed that not challenging service is not an admission of jurisdiction.

**III.** **CONCLUSION**

  Counts I, III, IV, V, and VI against Andrey Vavilov should be dismissed, with prejudice.   Jurisdictional discovery should not be permitted.   Any request for leave to amend again should be denied as futile.

EXHIBITS

1.    Declaration of Andrew Ryan.

Case 1:11-cv-07877-PAC   Document 68   Filed 11/27/13   Page 14 of 14